Peelle, J.,
delivered the opinion of the court:
The claimant, a captain in the United States Navy, bases his right to recover the pay and allowances of an officer of the Army of corresponding rank, after twenty years’ service, under section 13 of the act March 3, 1899 (30 Stat. L., 1007), which, so far as applies to the present case, is as follows:
“Seo. 13. That after June thirtieth, eighteen hundred and ninety-nine, commissioned officers of the line of the Navy and of the medical and pay corps shall receive the same pay and allowances, except forage, as are or may be provided by or in pursuance of law for the officers of corresponding rank in the Army:
“Provided,, That such officers when on shore shall receive the allowances, but fifteen per centum less pay than when on sea duty. * * *
“Provided further, That when naval officers are detailed for shore duty beyond seas they shall receive the same pay and allowances as are or may be provided by or in pursuance of law for officers of the Army detailed for duty in similar places. * * *
“And provided further, That no provision of this act shall operate to reduce the present pay of any commissioned officer now in the Navjr; and in any case in which the pay of such an officer would otherwise be reduced he shall continue to receive pajr according to existing law.”
The several claims are stated by counsel in their brief as follows:
1. While traveling under orders from Barbados to New York in December, 1899, he was paid $50 as expenses, but was not paid mileage. He claims mileage at the army rate of 7 cents a mile, less the amount already paid him.
2. Between December 2, 1899, when relieved as commanding officer of the U. S. S. Lancaster and ordered to report to the Navy Department, and February 7, 1900, when he took command of the U. S. S. Baltimore at Hongkong, China, he was paid only shore pay, $3,825 a year, 15 per cent less than sea pay. He claims sea pay, $4,500 a year, during that time.
3. From May 26, 1900, to March 1, 1901, he was paid sea pajr of a captain at $4,500 a year, and claims 10 per cent increase of this pay for service in the Philippines and in China, under the acts of May 26, 1900, and March 2, 1901 (31 Stat. L., 211, 903).
*120 4. From March 2, 1901, to June 11, 1901, he was paid the sea pay o'f a captain, $4,500 a year, and claims 10 per cent of this pay for service outside the United States, under the provisions of the act of March 2, 1901 (31 Stat. L., 903).
5. From June 12, 1901, to September 30,1901, he was paid sea pay at $4,500 a year, and claims 10 per cent increase under the act of March 2,1901, for service outside the United States. During this time he was in the waters of San Francisco Bay, traveling- from San Francisco to Puget Sound, and in the waters of Puget Sound. This claim is made provisionally in case his service in Chinese and Philippine waters is not considered to be service “in China” and “in the Philippine Islands,” entitling him to 10 per cent increase from May 26, 1900, to March 1, 1901. In that event, he would claim that his service in waters of the United States was beyond the limits of the States comprising the Union. This claim is asserted only as an alternative to the claim for 10 per cent increase during the earlier period. •
6. He claims commutation of sea ration under Revised Statutes, sections 157,8 and 1585, from July 1, 1899, to September 30, 1901, except from December 3, 1899, to February 1,1900, and on April 5 and 6,1901, when he was not attached to a seagoing vessel.
1. In respect to the claim first mentioned, for mileage, it appears from findings ii and hi that the claimant, while commanding officer of the U. S. S. Lancaster at Barbados, West Indies, was relieved therefrom and ordered to report to the Navy Department. He traveled from Barbados to New York in the merchant steamer Wordsworth, a distance of 2,106 miles, for which he was furnished transportation at a cost of $50.
He claims mileage under the provisions of the Army appropriation act, March 3, 1899 (30 Stat. L., 1064-1068), which reads:
£ a ® » á ri+i ^ § g “ -+-3 O K ¡B ^ ^ ; c3 CD ' H . << H ^ B c S* /<! ^ CD p ^ go © o P c4- % Í <-<- ffl © t GQ <1 >" P ft- ® r P 0 0 W O c PS © 0 50 5- ® ST s © $ | s B CD 5 P CO CD, O ©P >c *121 be paid to officers when traveling to and from our island possessions in the Atlantic and Pacific oceans.”
These provisions the claimant contends are made applicable to him by the provisions of section 13 above quoted.
The claim for mileage, however, is governed by the ease of Chauncy Thomas v. United, States (ante, p. 10), recently decided by this court; and following that decision the claimant is entitled to recover.
2. As to the claim for sea pay while traveling under the order of the Navy Department in a merchant vessel from December 2 to December 12, 1899, such travel being from Barbados, the place of his detachment from the U. S. S. Lancaster, the decision in the case of Ryan v. The United States (post, p. 143), now decided, is controlling, and following that decision the claimant is not entitled to recover sea pay during such travel subsequent to his detachment from the vessel in which he was performing sea service. Nor is the claimant entitled to recover sea pay while traveling to his post of duty on a merchant vessel from San Francisco to Hongkong, for the reason that when he was detached from the U. S. S. Lancaster he thereby ceased to perform sea service and became entitled to the lower or exceptional rate of pay provided for by the proviso to section 13, and that rate of pay continued until he reached the vessel to which he was subsequently assigned, as, “no service shall be regarded as-sea service except such as shall be performed at sea under the order of a department and in a vessel employed by authority of law.”
3. The claim for 10 per cent increase over and above the rates of pay proper from May 26, 1900, to March 1, 1901, for service in the Philippine Islands and in China, is based on the provisions of the army appropriation acts of May 26, 1900, and March 2, 1901 (31 Stat. L., 211 and 903), the first of which provisions reads:
“For additional twenty per centum increase on pajr of enlisted men, four million five hundred and twenty-four thousand seven hundred and fifteen dollars: Provided, That hereafter the pay proper of all officers and enlisted men serving in Porto Kico, Cuba, the Philippine Islands, Hawaii, and in the Territory of Alaska shall be increased ten per centum *122 for officers and twenty per centum for enlisted men over and above the rates of pajr proper as fixed bjr law in time of peace.” * * *
That provision, it will be noted, has reference to the service of the Army in our island possessions, while the provisions of the act of March 2, 1901, have reference to service outside the United States and in China, and read as follows:
“For additional ten per centum increase on pay of officers serving at foreign stations, five hundred thousand dollars:
“Provided, That hereafter the pay proper of all officers and enlisted men serving beyond the limits of the United States comprising the Union, and the Territories of the United States contiguous thereto, shall be increased ten per centum for officers and twenty per centum for enlisted men over and above the rates of pay proper as fixed by law for time of peace, and the time of such service shall be counted from the date of departure from said States to the date of return thereto.
“Provided farther, That the officers and enlisted men who have served in China at any time since the twenty-sixth day of Maj', nineteen hundred, shall be allowed and paid for such service the same increase of pay proper as is herein provided for.” * * *
Those provisos the claimant contends are applicable to officers of the Navy by virtue of the provisions of section 13, act of March 3, 1899 (supra). But as the provision of section 13 only makes those statutes applicable to officers of the Navy “ when detailed for shore duty beyond seas,” at places similar to those where officers of the Army are detailed for duty, it follows that to entitle the claimant to the 10 per cent increase provided for by those acts to officers of the A rmy. it must be made to appear that the claimant was “detailed for shore duty beyond seas. ”
This he has failed to do. On the contrary, as shown by findings vra to xn, both inclusive, the claimant was in command of the U. S. S. Brooklyn, a vessel in commission for sea service at the Asiatic station, and being in commission, with her complement of officers and enlisted men aboard, it matters not what her proximity was to a foreign shore (United States v. Barnette, 165 U. S., 174); and this was correctly the view of the accounting officers of the Treasury Department, for the claimant was paid during that period the higher ox-sea pay of his gx-ade, as set forth in finding vn.
*123 But, as this question is passed upon adversely to the claimant’s contention in the case of Ryan v. The United States (post, p. 143), we need not pursue it further.
4. The claim for 10 per cent increase on the pay proper from March 2 to June 11, 1901, for service “beyond the limits of the United States comprising the Union and the Territories contiguous thereto,” is also based on the act, March 2, 1901 (supra), being’ the first proviso thereto, as set forth above.
That provision, how'ever, like the preceding one for service in China, is only made applicable to naval officers by the provision of section 13, “when detailed for shore duty bejmnd seas.” As the claimant was serving as commanding officer of the U. S. S. Oregon, a vessel in sea service, during the period claimed for, he was not doing shore duty, and is not, therefore, entitled to recover.
This question is also disposed of bjr the ruling in the case of Ryan v. The United States (supra).
5. The claim for 10 per cent increase under said act of March 2, 1901, from June 12 to September 30, 1901, also for service “beyond the limits of the United States comprising the Onion and the Territories contiguous thereto,” originated, if at all, while the claimant, as shown bjr finding xni, was in command of the U. S. S. Oregon, a vessel in commission, serving in the waters adjacent to the Pacific coast.
This claim is stated by counsel in their brief as an alternative one; that is to say, if the claimant’s “service in Chinese and Philippine waters is not considered to be service in China and in the Philippine Islands, entitling him to 10 per .centum increase from May 26, 1900, to March 1, 1901,” then “he would claim that his service in the waters of the United States was bejmnd the limits of the United States comprising' the Union.”
The claim for the increase in China and in the Philippine Islands is disposed of adversely to the claimant, both in the Kyan case {sup>ra), and in this case, and we will therefore consider the alternative claim for service in the waters of the United States; i. e., in the waters of San Francisco Bay and Puget Sound, and while en route between San Francisco and Bremerton, in the State of Washington.
*124 This service, tbe claimant contends, was service “beyond the limits of tbe United States,” within the meaning of'the act of March 2, 1901, providing “that hereafter the pay proper of all officers and enlisted men serving- beyond the limits of the United States comprising the Union and the Territories contiguous thereto, shall be increased ten per centum for officers and twenty per centum for enlisted men over and above the rates of pay proper as fixed by law for time of peace, and the time of such service shall be counted from the date of departure from said States to the date of return thereto.”
But, as before stated, as that act is only made applicable to officers of the Navy by section 13, act of 1899, “when detailed for shore duty beyond seas” at places similar to those at which officers of the Army are detailed for duty, it follows that such service was not shore duty; nor was it service at places similar to those at which officers of the Army are detailed for duty.
The claimant’s service was clearly at sea, as shown by finding vii, and he was paid, during said period, the sea pay of his grade; and he is not, therefore, entitled to the increase of 10 per cent.
Those cases granting the increase of 10 and 20 per cent on the pay proper of officers and enlisted men in the Army were a recognition by the Congress of the extra hazards attending the service in China and in the Philippine Islands, both by reason of the climatic conditions and the oriental and uncivilized modes of warfare, as well as the oontagious diseases common in those countries, with which the land forces had necessarity to come in contact.
These hazards did not apply to the officers and enlisted men of the Navy who were aboard their respective vessels at sea, and therefore to .entitle them to the increase within the meaning of section 13 thejr must show that they were detailed for shore duty in those countries similar to that performed by officers of the Army.
Under this head counsel for claimant also discuss the question as to the basis upon which the 10 per cent increase *125 should be calculated. The acts of May 26, 1900, and March 2, 1901 (supra), say:
“That hereafter the pay proper of all officers * * * shall be increased 10 per cent.” '
The question presented, therefore, is as to the meaning of the words “pajr proper.” That is to say, whether the minimum pay of an officer in the Amy, or his minimum pay plus his longevity pajr, shall form the basis for calculating the increase of 10 per cent.
But as we have reached the conclusion that .the claimant is not entitled to recover the 10 per cent increase provided for by the acts hereinbefore set forth, we refrain from expressing any opinion as to the meaning of the words.
6. The claim for commutation of sea ration under Revised Statutes, sections 1578 and 1585, while attached to a seagoing vessel, is claimed as additional to the allowances provided for by section 13, act of March 3, 1899. Those sections are:
“Sec. 1578. All officers shall be entitled to one ration, or to commutation therefor, while at sea or attached to a seagoing vessel.”
“Seo. 1585. Thirty cents shall in all cases be deemed the commutation price of the navy ration.”
Prior to the passage of the act of March 3, 1899, all officers of the Kavy, “while at sea or attached to a seagoing vessel,” were entitled to the ration or the commutation price therefor.
The defendant’s contention is that bjr the provision of section 13 those sections of the Revised Statutes are repealed by necessary- implication. The provision of section 13 relied upon is:
“ That, after June thirtieth, eighteen hundred and ninety-nine, commissioned officers of the line of the Navy and of the medical and pay corps shall receive the same pay and allowances, except forage, as are or may be provided by or in pursuance of law for the officers of corresponding rank in the Army.”
The first and obvious rule of construction invoked by the claimant is that repeals by implication are not favored, and that if the provisions of said sections 1578 and 1585 are not repugnant to said section 13 the statutes should be construed toe-ether and effect be eriven to each.
*126 Counsel on both sides have ably presented their views, and cited numerous authorities in support of their respective contentions. The question is one purely of construction, if construction be allowable under the phraseology of the section. '
From the increase in the pay of officers of the Navy, as shown bjr the act of March 3, 1899, the court must assume either that there was some complaint, founded in justice, on the part of the officers of the Navy because their pay and allowances were less than officers of corresponding rank in the Army, or that the Congress, recognizing such inequality, sought to right it. The result was the passage of the act of 1899, by the express provisions of which the officers of the Navy therein classified are given “the same pay and allowances, except forage, as are or may be provided, by or in pursuance of law for the officers of corresponding rank in the Army.”
The question is, What did the Congress mean by the language used? The claimant’s contention is:
“That the granting of the same pay and allowances operates as a repeal of the old navy pay and allowances onty where the possession of the old navjr pay and allowances is inconsistent with the receipt of the army pay and allowances. ”
They concede that “in granting army pay there is an implied repeal of the navy pay, because there is an inconsistency between the receipt of both army and navy pay.” And further that “the granting of army mileage repealed the navy mileage.” But they say “the sea ration is an allowance which is not inconsistent with army allowances, an allowance for which no substitute is offered by the grant of army allowances,” and which is “peculiarly appropriate to naval service for which there can not be an army equivalent.”
The act then, it is conceded and rightly so, operates to repeal by implication the prior acts granting pajr and mileage to naval officers; and in addition thereto the act of 1899 grants to naval officers the army allowances for quarters and fuel when on shore, an allowance not theretofore granted to naval officers.
Therefore, in these respects it may fairly be said that the inequality in compensation theretofore existing between officers of the Army and Navy were corrected by the act of *127 1899;-that is to say, thej? are given the “same pay and allowances, except forage, as are or may be provided by or in pursuance of law for officers of corresponding rank in the Army.”
Thus officers of the Navy were not only given the same pay and allowances (except forage) to which officers of the Army were entitled at the time the act was passed, but the act contains a provision making future legislation, in respect to such pay and allowances, applicable to naval officers, thereby indicating the purpose of the Congress to maintain the policy of equality thus established.
The only allowance excepted is for forage, while the only exception in pay is, as set forth in the first proviso, “that such officers, when on shore, shall receive * * * fifteen per centum less pay.”
Another significant provision in the section, however, is the last proviso, which reads:
“ Andprovided further, That no provision of this act shall operate to reduce the present pay of any commissioned officer now in the Navy; and in any case in which the pay of such an officer would otherwise be reduced he shall continue to receive paj1- according to existing law.”
That proviso, though by its terms applicable to the whole act, excepts from the purview of section 13 those commissioned officers of the Navy whose pay would thereby be reduced, and provides that as to them they “shall continue to receive pay according to existing law.” And that such officers then in the service, who might thereafter be promoted, should continue to. receive the benefit of that provision, the Congress, bj^ the naval appropriation act June 7, 1900 (31 Stat. L., 684-697), provides that'—
“section thirteen of the act approved March third, eighteen hundred and ninety-nine, entitled ‘An act to reorganize and increase the efficiency of the personnel of the Navy and Marine Corps of the United States,’ is hereby so amended as to provide that nothing therein contained shall operate to reduce the paj^ which, but for the passage of said act, would have been received by any commissioned officer at the time of its passage or thereafter.”
The original proviso to section 13 excepted from the purview thereof the commissioned officers “now in the Navy” *128 whose “present pay” was thereb3r reduced, while the amendment thereto extends the exception so as to apply to the pay such officers may receive thereafter in case of promotion to higher grades.
We have thus pointed out the exceptions which we think material to aid us in ascertaining the meaning of section 13 as applicable to the present case. That is to say, the exception to army allowance is forage; the exception to army pay is when on shore, and then to guard against reducing the pay, then being received, section 13 excepts from the operation of the act those officers whose pay would thereby be reduced and expressl3r permits them to “continue to receive pa3T according to existing law. ”
If the Congress intended to continue the naval ration, it would seem that the place so to express it would have been in the proviso, wherein such officers are protected against aiyv reduction of their old Nav3r pa3T.
The words “ same pa3r and allowances” would seem to indicate that the Congress intended, except as therein provided, to conform the pay and allowances of the commissioned officers of the line of the Havy and of the Medical and Pay Corps to the pa31' and allowances of “officers of corresponding- rank in the Arm3r.” Had the word “ allowances ” been omitted from the section, there would be much force in the claimant’s contention. But the act embraces both subjects and the language justifies the conclusion that the act was intended as a new system for both pa3T and allowances.
The words “ same pa3r and allowances, except forage,” can mean but one thing, and that is that after June 30, 1899, the commissioned officers of the line of the Navy and of the Medical and Pa3' Corps ‘ ‘ shall receive the same pay and allowances, except forage,” as now is or may hereafter be provided by law “for the officers of corresponding rank in the Arm3r.”
Certainty those words would not be satisfied b3r giving naval officers less pa3r and allowances than therein provided for, nor would the3r be satisfied by giving them more, except as therein expressly provided for. It was to guard against giving them less pa3r than they were then receiving that the proviso was added, but we find no such provision saving to them the naval ration.
*129 While, on the other hand, the acceptance of navy pay, when higher than army pay, does not operate to deprive such officei’s of the other provisions of the section granting them army allowances when on shore, and this, we think, materially strengthens the views we have expressed herein, i. e., that all the pay and allowances to which such officers are entitled, except as therein provided, are embraced in the act of 1899.
To hold that the words same pay and allowances are inconsistent with prior acts granting pay and mileage to naval officers, though consistent with the act granting an allowance for a ration, would be drawing a distinction without a difference. The words “same pay and allowances” embody a new system applicable to naval officers, and must have a meaning-independent of the prior acts covering the same subjects, except in those particulars as therein specially provided. That is to sa3r, to continue the sea ration to naval officers there must be added to' the words “same pajr and allowances” another proviso to the effect that such officers shall, in addition thereto, continue- to receive the ration provided for by a prior act. To add those or equivalent words would be legislation.
Therefore, in the absence of some such .provision all the pay and allowances to which officers of the line of the Navy and of the Medical and Pay Corps are entitled, except as therein expressly provided, are covered by the language in the purview of the section.
The word “same” means identical, not different oi; other,- and to put a different construction on the language used would be a violation of the well-known rule that where the language is free from ambiguitj” it is not allowable to interpret it.
While the rule is well established that where there are two acts on the same subject effect should be given to both if possible, yet the further equally well-established rule is:
“If the two are repugnant in any of their provisions, the later act, without any repealing clause, operates, to the extent of the repugnancy, as a repeal of the first; and. even where the two are not in express terms repugnant, yet if the later act covers the whole subject of the first, and embraces new provisions plainly showing that.jt was intended as a substitute for the first act, it will operate as a repeal of that *130 act.” (United Staten v. Tynen, 11 Wall., 88, 92, and authorities cited therein.)
The act of 1899 covers the whole subject of pay and allowances to the officers of the Navy embraced in the purview of section 13, among which is the provision, new to naval officers, for army allowances for quarter’s and fuel as provided by Revised Statutes, section 1270, made applicable to naval officers by said section 13 when on shore.
The present case seems to come fairly within the decision last cited. Section 26, act of 1899, being the last section thereto, provides:
“ That all acts and parts of acts so far as the3r conflict with the-provisions'of this act are herebj^ repealed.”
We therefore reach the conclusion that sections 1578 and 1585, granting to naval officers while at sea a ration, are inconsistent with and repugnant to the act of 1899 substituting army pajr and allowances for the pajr and allowance theretofore allowed to officers of the Navy, and being repugnant to said act of 1899 they are, if not by the express provision of section 26, above cited, necessarily repealed by implication.
• The claimant is entitled to recover the sum of $97.42 for mileage,' but the petition in respect to all other claims is dismissed.