Campbell, Chief Justice,
reviewing the facts found to be established, delivered the opinion of the court:
The plaintiff was appointed a paymaster’s clerk in the Navy for duty at Mare Island Navy Yard March 13, 1913. Prior thereto he was an enlisted man in the Navy. He received pay at the rates provided by the act of May 13, 1908, 35 Stat. L., 128, as amended by the act of June 24, 1910, 36 Stat. L., 606, and claims he should have been paid in accordance with section 1556, Revised Statutes, insisting that the proviso in said act of May 13, 1908, continued the provision for pay for the paymaster’s clerk at Mare Island in operation. The question calls for a construction of said acts. Section 1556 provides:
“ That commissioned officers and warrant officers on the active list of the Navy of the United States, and the petty officers * * * and employees in the Navy shall be entitled to receive annual pay at the rates herein stated after their respective designations.” Beginning with the pay of the Admiral, the statute goes through the list and includes warrant officers, secretaries, and clerks, and provides: Clerks to paymasters at navy yards, Boston, New York, Philadelphia, and Washington, $1,600; Kittery, Norfolk, and Pensacola, $1,400; Mare Island, $1,800; clerks to paymasters at other stations, $1,300.
The act of May 13,1908, 35 Stat. L., 127, provides:
“Hereafter all commissioned officers of the active list of the Navy shall receive the same pay and allowances according to rank and length of service, and the annual pay of each grade shall be as follows: * * * There shall be allowed and paid to each commissioned officer below the rank of rear admiral ten per centum of his current yearly pay for each term of five years’ service in the Army, Navy, and Marine Corps. The total amount of such increase for length of service shall in no case exceed forty per centum on the yearly pay of the grade as provided by law. * * * The pay of all warrant officers and mates is hereby increased twenty-five per centum, and all paymasters’ clerks shall, while on duty, receive the same pay and allowances as warrant officers of Uke length of service in the Navy. The pay of all active and *350 retired enlisted men of the Navy is hereby increased ten per centum. * * * The pay of all commissioned, warrant, and appointed officers and enlisted men of the Navy now on the retired list shall be based on the pay, as herein provided for, of commissioned, warrant, and appointed officers and enlisted men of corresponding rank and service on the active list; and all pay herein provided shall remain-in force until changed by act of Congress. Nothing herein shall be construed so as to reduce the pay or allowances now authorized by law for any commissioned, warrant, or appointed officer or any enlisted man of the active or retired lists of the Navy, and all laws inconsistent with this provision are hereby repealed.” (Italics not in original.)
The act of June 24,1910, 36 Stat. Z., 606, amended the foregoing by changing the terms applicable to paymasters’ clerks so as to read:
“All paymasters’ clerks shall, while holding appointment in accordance with law, receive the same pay and allowances and have the same rights of retirement as warrant officers of like length of service in the Navy.”
The general purpose of the said enactment was to provide compensation for all officers and enlisted men, and as regards paymasters’ clerks the statute departs from the former statute (sec. 1556) by assimilating their compensation to that of warrant officers of like length of service in the Navy. The former act provided a fixed salary for all paymasters’ clerks, except at seven places specifically mentioned. With this statute before them the Congress do not, in the act of May 13, 1908, incorporate the provision relative to these seven positions but omit them altogether, and in lieu thereof provide that all paymasters’ clerks shall, while on duty, receive the same pay and allowances as warrant officers of like length of service in the Navy, and the pay of warrant officers is increased twenty-five per centum. By the act of 1910 the additional right is given all paymasters’ clerks while holding appointment in accordance with law (not merely “ while on duty” as in the act of 1908) to receive the same pay and allowances and to “have the same rights of retirement” as warrant officers of like length of service in the Navy.
The act of May 13,1908, recasts the former statute, extends it, and deals comprehensively with the question of pay and *351 allowances for officers in the Navy. It therefore repeals section 1556, Revised Statutes. It is said in The Paquete Ha-bana, 175 U. S., 677, 685, to be a well-established rule in the construction of statutes, often affirmed and applied by that court, that “ even where two acts are not in express terms repugnant, yet if the latter act covers the whole subject of the first, and embraces new provisions plainly showing that it was intended as a substitute for the first act, it will operate as a repeal of that act.” Tynen's ease, 11 Wall., 88, 92; Healey case, 160 U. S., 136, 147.
In addition to this, there occur at the end of the provision the words “ and all laws inconsistent with this provision are hereby repealed.” This repealing clause relates to “ laws,” and not to the provisions of the bill then upon its passage, and can not be applied to what precedes it in the body of such bill. Dealing with the entire question of the pay and allowances of officers and men in the Navy and upon the retired list of the Navy and making provision therefor, the act of 1908 not only repealed the prior laws on that subject, for the reason above stated, but repealed such laws in express terms where they were inconsistent with the provisions of the later enactment. But there is a provision in said act declaring that nothing therein “ shall be so construed as to reduce the pay or allowances now authorized by law for any commissioned,'warrant, or appointed officer or enlisted man of the active or retired lists of the Navy,” and some effect must be given this provision. A paymaster’s clerk is an appointed officer, and the pay provided by said act for all paymasters’ clerks, by assimilating it to that of warrant officers, has the effect of reducing the pay which the paymaster’s clerk at Mare Island was entitled to receive under section 1556, Revised Statutes. We therefore have a statute which prescribes a method for determining the pay of “ all paymasters’ clerks ” instead of fixing their pay, as was done by section 1556; and in the application of said method it is found that the pay provided by section 1556 for the paymasters’ clerks at Mare Island and some other places will be reduced, while the same statute, in effect, provides that there shall not be a reduction of the pay or allowances “ now au *352 thorized by law ” for any appointed officer. We must assume that Congress had the provisions of section 1556 before them when they enacted the later act, and but for the saving clause above quoted there cóuld be no doubt that the pay and allowances for the paymaster’s clerk at Mare Island would have to be determined by the rule prescribed, namely, by assimilating it to that of warrant officers of like length of service. The act provides for “ all paymasters’ clerks,” and in that provision departs from the exceptions made by the former law; also it prescribes a different method of ascertaining the amount, because the former law fixed the pay; and, further, the act as amended, 86 Stat. Z., 606, grants to paymasters’ clerks certain rights of retirement which did not prevail under section 1556. The purpose and intention of the act to deal differently with paymasters’ clerks from what was done under the former law is manifest, and it is equally clear that the intention, as expressed therein, was to assimilate the pay, allowances, and privileges of all paymasters’ clerks to those of warrant officers of like length of service.
Congress appreciated that in making the changes required by said act and in the readjustment of the pay and allowances of officers or men under the act there might be some reductions in the pay and allowances they were receiving under existing law, and it was to prevent the inconvenience or hardship which would follow a reduction in pay of such officers that the said provision was inserted in the act. We must give a reasonable construction to said provision, and when Congress provides that the pay and allowances of “ all paymasters’ clerks ” shall be assimilated to the pay and allowances of warrant officers we may well hesitate to declare that it was intended by Congress to say that the pay of some but not of “ all ” paymasters’ clerks should be so assimilated. In Richardson’s case, 38 C. Cls., 182, this court was considering the purpose of the Navy personnel act of 1899, 31 Stat Z., 1007, as amended by the act of June 7, 1900. The fourth proviso in section 13 of the act was “that no provision of this act shall operate to reduce the present pay of any commissioned officer now in the Navy, and in any case in which the pay of such an officer would otherwise be reduced he shall continue *353 to receive pay according to existing law.” The use of the terms “present pay” and “now in the Navy” furnished a ready solution for the question as to whether the provision was continuous or limited to officers then in the Navy, and the holding of this court in the Thomas case, 38 C. Cls., 113, which confined the proviso to officers in the Navy when said act was passed, was followed. But the act of June 7, 1900, 31 Stat. L., 697, provided that section 13 of the Navy personnel act “is hereby so amended as to provide that nothing therein contained shall operate to reduce the pay which, but for the passage of said act, would have been received by any commissioned officer at the time of its passage or thereafter.” This enactment was an amendment of section 13 and was not in terms confined to the said fourth proviso in said section. The court, however, limited it to officers of the Navy at the time of the passage of the Navy personnel act, and held:
“ The term ‘ thereafter ’ does not mean persons who thereafter shall become officers in the Navy, but was intended, as the court holds, to apply to the pay which might accrue thereafter to persons in the Navy under any law in existence at the time the exception was made in favor of persons then in the Navy.”
The opinion was written by Judge Weldon, and accords with the opinions of the court written by Judge Peelle in the cases of Thomas, 38 C. Cls., 113, and Taylor, ibid, 155, in the latter of which cases (p. 160) it is said: “We are therefore of the opinion that the amendment (of June 7, 1900) was clearly intended to apply only to the commissioned officers in the Navy, when the original act was passed and to the pay they might receive thereafter in case of promotion.” It is true that the provision under consideration here does not use the identical language of the proviso in the Navy personnel act which spoke of present pay of officers “ now ” in the Navy, while the act with which we are dealing provides against a reduction of the pay “ now provided by law for any commissioned warrant or appointed officer or any enlisted man of the active or retired lists of the Navy ”; but it is also true that the amendment of June 7, 1900, was apparently broader than the former proviso in *354 section 13. The court declared in Taylor's case, supra (p. 159), that the evident purpose of section 13, act of March 3,1899, was to assimilate the pay of officers of the line of the Navy and of the Medical and Pay Corps to the pay and allowances of officers of corresponding rank in the Army, reserving, however, to such officer then in the Navy the right . to continue to receive Navy pay in case the assimilated pay under the act was less, and said: “ But to extend this proviso to officers appointed after the pay and allowances took effect would defeat the very purpose of the act.” And in Richardson's case, 38 C. Cls., 191, it is said:
“ It is not safe to infer that Congress intended to depart from the policy of confining Navy pay in certain cases to officers in the Navy at the time the personnel act was passed and by the amendment of the latter act of June 7, 1900, to enlarge the scope of the first statute so as to permit all officers then in the Navy and all that might become officers in the Navy thereafter the benefit of the increased pay. That officers in the Navy at the time the personnel act was passed should not be reduced in pay was an obvious and just exception; and to have such an exception preserved in all grades is very obvious and just, which thereby prevents the promotion in grade from working a diminution of pay.”
The court gave 'effect to the general intent of the act by said cases and did not allow a proviso incorporated for a reasonable purpose to be carried beyond the reason for it. A construction was adopted which gave operation to the entire act and its separate provisions.
Replying to the plaintiff’s contention, based upon a quotation from De Lima v. Bidwell, 182 U. S., 1, which is again cited here, it was said in Richardson’s case:
“The statute cited embraces a class of persons in which there is no distinction or classification, and was intended to apply to a general class, having equal rights of protection; but in the case at bar the officers of the Navy in rank and pay embrace a great variety of conditions, depending upon their legal status and connection with the naval service.”
The Comptroller of the Treasury held in a case similar to that in hand, involving the application of said statute of May 13, 1908, as amended by the act of June 24, 1910, to *355 the pay and allowances of a paymaster’s clerk whose assimilated pay was less than that prescribed by section 1556, Revised Statutes, that the provision against reduction did not apply to a paymaster’s clerk who was appointed subsequent to said act. 67 Mss. Comp. Dec., 1527, Dec. 30, 1913; see also appeal No. 23352, February 9, 1914, in re James F. Kutz. The comptroller held that the provision applies to the reduction of the pay of an officer as distinguished from that of an office. This view is attacked üpon the theory that the pay and allowances provided by law pertain to the office and not merely to the incumbent of such office, and while generally speaking this contention is true, it is yet the fact which plaintiff has the burden of proving that the pay and allowances provided by law for the paymaster’s clerk authorizes him as the incumbent of such office to receive more than he has been paid..
We must look to the law as it is and harmonize if possible any apparent repugnancy in its provisions. We must, if it can be done, find a field of operation for all its provisions and we must have in mind the purpose and intention of the law. The reason for the provision against reduction in the act of 1908 is as manifest as was the provision against reduction in the act of 1899 as amended in 1900. Somewhat different language is used, but the reason is the same. This is apparent from the generality of the terms used in the act of 1908 relative to reduction. That act, as had the Navy personnel act, provided for an assimilated pay which in some cases could reduce the pay and allowances of officers then in the Navy. It is unreasonable to suppose that Congress meant to provide that the pay for “ all paymasters’ clerks ” should be assimilated to that of warrant officers, and also that the pay of the paymaster’s clerk at Mare Island and some other places should not be so assimilated or, in other words, that while providing a distinct plan applicable in terms to all of a class of officers, Congress really provided two plans allowing some of the paymasters’ clerks to avail themselves of the one or the other, according as their pay would be reduced by the one or increased by the other. If Congress had so intended, they could have followed the *356 method adopted in section 1556 of prescribing the pay in terms applicable to certain excepted cases, but they chose to make provision for all paymasters’ clerks.
The contention of the plaintiff would require us to hold that the provision for the assimilation of pay and allowances for all pajunasters’ clerks, though made in express terms, does not mean what it says and that the provision against reduction extends the former pay and allowances to certain paymasters’ clerks, though it does not in express terms do so. We would have to read into the latter provision a term sufficient to make it apply to the case of a successor, to the paymaster’s clerk at Mare Island. We have no function of legislation. The office of a proviso generally is either to except something from the enacting clause or to qualify or restrain its generality or to exclude some possible ground of misinterpretation of it as extending to cases not intended by the legislature to be brought into its purview. “A general rule, applicable to all cases, would most naturally be expected to find its proper place in some distinct and independent enactment,” per Mr. Justice Story in Minis case, 15 Pet., 423, 445, 447. The rule is that where the enacting clause is general in its language and objects and a proviso is afterwards introduced, that proviso is construed strictly and takes no case out of the enacting clause which does not fall fairly within its terms. Ewing case, 140 U. S., 142, 148. “ The general rule of law is that a proviso carves special exceptions out of the body of the act, and those who .set up any such exception must establish it,” etc. Ryan v. Carter, 93 U. S., 78, 83; Schlemmer v. Buffalo, etc., Ry., 205 U. S., 1, 10. We must look to the entire enactment and so construe it as to make all parts of it harmonize, if possible, and thus give meaning to each part. Market Co. v. Hoffman, 101 U. S., 112, 115; Bernier v. Bernier, 147 U. S., 242, 247.
The purview of the act and the words of the proviso must be reconciled, if may be, and the operation of the proviso may be limited by the scope of the enacting clause. White case, 191 IT. S., 545, 551. The spirit as well as the letter of a statute must be respected, and where the whole context of *357 the law demonstrates a particular intent in the legislature to effect a certain object some degree of implication may be called in to aid that intent. Durousseau case, 6 Cranch, 307, 314; the Paguete Habana, 175 U. S., 677, 685. It is said in New Lamp Chimney Co., v. Brass & Copper Co., 91 U. S., 656, 663: “ Words and phrases are often found in different provisions of the same statute, which, if taken literally, without any qualification, would be inconsistent and sometimes repugnant, when, by a reasonable interpretation — as by qualifying both or by restricting one and giving to the other a liberal construction — all become harmonious and the whole difficulty disappears; and in such a case the rule is that repugnancy should, if practicable, be avoided and that if the natural import of the words contained in the respective provisions tends to establish such a result the case is one where a resort may be had to construction for the purpose of reconciling the inconsistency unless it appears that the difficulty can not be overcome without doing violence to the language of the lawmaker.” See Heidekoper v. Douglass, 3 Cranch, 1, 65.
We can not reconcile the general provision of the enactment requiring the pay and allowances of all paymasters’ clerks to be assimilated to the pay and allowances and rights of retirement of warrant officers with the view that the pay for successors to a number of paymasters’ clerks at designated stations shall continuously be determined by a prior enactment applicable to them alone and their rights of retirement be still found in the later act. Could the statute, couched in the language used, mean that the pay of the successors to the paymaster’s clerk at Mare Island should be found by reference to section 1556 and their rights of retirement or to longevity pay be ascertained from the later act? Was it intended by forbidding the reduction mentioned to affirm that some paymasters’ clerks should receive assimilated pay and allowances and rights of retirement and the successors of others receive stated sums and also the rights of retirement? The statute does not expressly continue such fixed pay, as was done in the Navy personnel act, nor affirmatively make it applicable to succeeding officers. *358 We can, by observing the purpose and reason of the saving ■ clause, limit it to those coming strictly within its terms and thus uphold the body of the act and effectuate its intention. Meaning is thus given to all parts of the act and harmony results. We therefore hold that the plaintiff’s case is not within the terms and meaning of the said saving clause. Nor does this construction do him any injustice, because he was not a paymaster’s clerk in 1908. He was not appointed until 1913, at which time the act of 1908, as amended by that of 1910, was in effect. When he was appointed and accepted the office of paymaster’s clerk at Mare Island he knew that said act provided for the assimilation of his pay and allowances to that of a warrant officer. The said provision of the act of 1908, intended as it was to prevent a reduction of pay of officers or men then in office, does not apply to the successors in office of such officers or men.
As said by the comptroller in a similar case, the plaintiff was not a naval officer at the time of the passage of said act. “No pay was then ‘authorized by law’for him, and the provision in the act assimilating the pay of all paymasters’ clerks to that of warrant officers of like length of service could not therefore have the effect of reducing his pay. The pay authorized by law for a paymaster’s clerk at the time of his entrance into the service was the pay of a warrant officer of like length of service, at which rate he has been correctly paid for the period in question.”
The petition should be dismissed, and it is so ordered.
Booth, Judge, and AtkiNSON, Judge, concur.