Campbell, Chief Justice,
delivered the opinions of the court:
ON DEMURRER TO ORIGINAL PETITION
An act of Congress approved May 24, 1924, 43 Stat. 139, conferred jurisdiction on the Court of Claims to hear “ and render judgment in any and all legal and equitable claims arising under or growing out of any treaty or agreement between the United States and the Creek Indian Nation or *271 Tribe,” with certain limitations not material here. Section 2 of the act apparently contemplates one suit to be filed within five years from the date of the approval of the act but a later enactment authorizes the claims to be presented in separate suits. (44 Stat. 568.) A petition has been filed under these acts on behalf of the Creek Nation to which the Government has demurred. The case is before the court upon this demurrer.
After stating some of the early history of the Creeks or Muscogees and referring to the treaty of 1790, 7 Stat. 35, the petition proceeds to state the situation of the Upper and Lower Creeks during the War of 1812 and what is known as the “ Creek War,” and avers that the Upper Creeks were hostile while the Lower Creeks remained loyal to the United States. It is averred that upon the restoration of peace General Pinckney was authorized to conclude a treaty of peace “ with the Creeks who had been engaged in hostilities against the United States,” and that on the 10th day of July, 1814, General Jackson succeeded General Pinckney and was directed to conclude a treaty of peace under the instructions that had been given the latter, but that notwithstanding these instructions authorizing him to conclude a treaty with the hostile Creeks, alone, “he, by force and threats, threatening to put Tustunnuggee Thlucco (Big Warrior), the speaker of the Nation, in irons unless he called together his council * * * and by force, threats, and intimidation undertook to force the representatives of the said Creek Nation to execute a treaty conveying ” over twenty-three millions of acres of the Creek Nation domain.
It is averred that the representatives of the Creek Nation met, all of them, with one exception, being friendly and not hostile to the United States, and protested to General Jackson that the lands were perpetually guaranteed to the Creek Nation by treaty, that the hostile Creeks had no interest in the fee to the lands, and that the treaty as drawn did not provide any compensation for the lands required to be ceded. It is further alleged “ that said Jackson represented to said council that he was without power to make any agreement to compensate them for their lands and that unless they signed the treaty as he had drawn it he would furnish the *272 whole tribe with provisions and ammunition .and that they could go down to Pensacola and join the Ned Sticks and British and that, by the time they got there, he would be on their tracks and whip them and the British and drive them into the sea,” and that driven to this extremity they submitted and signed the treaty, a copy of which is attached to the petition. The petition seeks payment for the twenty-three millions and more acres of land at “the minimum value of said land on the 9th day of August, 1814,” which is averred to be $1.25 per acre, with interest from that date.
As above stated, the claims which the jurisdictional act authorizes the court to hear and determine are those “ arising under or growing out of any treaty or agreement ” between the United States and the Creek Nation. This assumes the existence of a treaty or agreement and the possibility of a claim under it, but the act nowhere authorizes the court to set-aside a treaty alleged to have been made under duress or produced by threats. The claim here asserted is not one arising from the treaty or growing out of one, but involves the ignoring of the treaty itself. It can not be asserted at once as a claim under the treaty and a claim against the treaty.
By section 153, Judicial Code, it is provided that the jurisdiction of this court shall not extend to any claim against the Government (not pending therein on December 1, 1862) “ growing out of or dependent on any treaty stipulation” with the Indian tribes. Construing this provision in United States v. Weld, 127 U. S. 51, 57, the Supreme Court say: “ In order to make the claim one arising out of a treaty within the meaning of section 1066-, Devised Statutes (153 Judicial Code), the right itself, which the petition makes to be the foundation of the claim, must have its origin — derive its life and existence — from some treaty stipulation.” While the jurisdictional act removes the bar of this section 153, and authorizes the court to hear and determine certain kinds of claims, it describes them, as already stated, in language similar to that construed in the Weld case, supra. In the Old Settlers case, 148 U. S. 427, 469, the Supreme Court say: “ The settlement of a controversy arising or growing out of these Indian treaties or the laws of *273 Congress relative thereto and the determination of what sum, if any, might be justly due under them, certainly does not include a claim which could only be asserted by disregarding the treaties or laws or holding them inoperative on the ground alleged.”
In this same case (p. 468) is also to-be found the following language applicable to the plaintiff’s contention in the present case: “Unquestionably a treaty may be modified or abrogated by an act of Congress, but the power to make and unmake is essentially political and not judicial, and the presumption is wholly inadmissible that Congress sought in this instance to submit the good faith of its own action or the action of the Government to judicial decision, by authorizing the stipulation in question to be overthrown upon an inquiry of the character suggested, and the act does not in the least degree justify any such inference.” Congress has not clothed this court with power to annul the treaty on the ground of fraud or duress in its execution, and has limited the inquiry to claims “ arising under or growing out of ” a treaty or agreement. See also Lone Wolf v. Hitchcock, 187 U. S. 553, 567. In Otoe & Missouria Indians v. United States, 52 C. Cls. 424, there was an act quite as broad as that in the instant case,- and this court said, page 429, “ That this [act] does not give this court jurisdiction to inquire into the inequity or impropriety of any of these treaties between these Indians and the United States is so obvious as to hardly need citation of authorities.”
Speaking of the jurisdictional act of March 2, 1895, 28 Stat. 898, which authorized suit in the Court of Claims, so that the rights, legal and equitable, of the United States and the Choctaw and Chickasaw Nations and certain affiliated bands “ shall be fully considered and determined and to try and determine all questions that may arise on behalf of either party,” the Supreme Court say: “ It is thus clear that the Court of Claims was without authority to determine the rights of parties upon the ground of mere justice and fairness, much less under the guise of interpretation, to depart from the plain import of the words of the treaty. * * * To hold otherwise would be to practically recognize an au *274 thority in the courts not only to reform or correct treaties, but to determine questions of mere policy in the treatment of the Indians, which it is the function alone of the legislative branch of the Government to determine.” United States v. Choctaw, etc., Nations, 179 U. S. 494, 535. The claim set up in the petition is not such a claim as is authorized by the jurisdictional act. As further pointed out by the Government, by the treaty of 1856 (11 Stat. 699, 700) the Creek Indians relinquished to the United States all right or title to any lands theretofore owned or claimed by them, whether east or west of the Mississippi Eiver, “and any and all claims for or on account of any such lands” except those embraced within the boundaries described in the second article of this treaty of 1856.
It was stated in argument that acting upon the amendatory act authorizing the Creek Nation to present its claims in separate suits instead of in one suit, the nation had instituted other suits besides the instant one. They are not now before the court. Our conclusion is that the defendant’s demurrer to the petition should be sustained and the petition dismissed. And it is so ordered.
ON DEMURRER TO AMENDED PETITION
Upon demurrer interposed and sustained to the original petition in this cause the petition was dismissed. The court’s opinion on the questions raised by the demurrer was announced January 10, 1927. Thereafter a motion was filed asking that the order of dismissal be set aside and the filing of an amended petition be allowed. This motion was granted and an amended petition was filed February 1,1927. The defendant has demurred to this amended petition and the cause is now before the court upon the demurrer. The questions now presented are not very different from those already considered, and we refer to our opinion on the first hearing. As is there pointed out, the jurisdictional act, Exhibits A and B to the amended petition, confers jurisdiction on the Court of Claims to hear and determine any and all legal and equitable claims “ arising under or growing out of any treaty or agreement between the United *275 States and the Creek Indian Nation or Tribe.” The amended petition avers “that this suit is brought upon a claim arising under and growing out of the treaty made between the United States and the Creek Nation on the 7th day of August,, 1790.” It is averred that by virtue of this treaty the Creek Nation “ obtained a vested right to the lands described in said treaty of which the lands taken as hereinafter narrated were a part.” Whether Article Y of the treaty vests in the Creek Nation title to lands referred to therein we need not determine at this time, because if the averment be treated as one of fact and not merely a conclusion of the pleader it is apparent that what the plaintiff seeks recovery for is a claim that the treaty of the 10th day of July, 1814, a copy of which as Exhibit I) is made part of the amended petition, “ took from the Creek Nation about 23,000,000 acres of the Creek national domain, which had been guaranteed to the nation by the treaty of August 7, 1790.” The amended petition does not vary the effect of the averments in the original petition. The conclusions which the amended petition sets forth are to be accepted only so far as they are borne out by the terms of the treaties to which they refer. The treaty of July 10, 1814, must speak for itself. The claim now asserted is not one “ arising under or growing out of any treaty or agreement.” The meaning of these terms in the jurisdictional act is shown by the cases cited in our former opinion. The averment that the lands were taken under the power of eminent domain is a mere conclusion. There was a treaty — that of July 10, 1814 — which after ratification by Congress became binding on both parties. This court can not amend or set aside that treaty, and until that be done it must be recognized as valid. See Old Settlers case, 148 U. S. 427, 469. The effort to do away with the effect of the treaty of the 7th day of August, 1856, and the relinquishment of rights by Article Y thereof can not avail, nor by its averments does the plaintiff defeat the agreement of 1889. The jurisdictional act does not create any liability against the United States. It is not an admission of liability. Its office is to furnish a forum in which the claim, if any, may be heard, relieving it from limitations as to time and in some instances *276 of mere technical defenses. The act is to be read to ascertain what is waived. Old Settlers case, 148 U. S. 427, 468; United States v. Choctaw and Chickasaw Nations, 179 U. S. 494, 535; Lone Wolf v. Hitchcock, 187 U. S. 553, 567; Otoe & Missouria Tribes of Indians, 52 C. Cls. 424, 429; Sisseton & Wahpeton Indians, 58 C. Cls. 302, 329. The jurisdictional act excludes from its provisions “ any balance claimed to be due on the so-called Loyal Creek claim.” Just what this claim is, or was, does not appear, but for the reasons stated the claim asserted is not one provided for or contemplated by the jurisdictional act. The demurrer to the amended petition should be sustained and the petition dismissed. And it is so ordered.
Moss, Judge; Graham, Judge; Hat, Judge; and Booth, Judge, concur.