# UNITED STATES *v.* WELD.

## APPEAL FROM THE COURT OF CLAIMS.

No. 1366. Submitted March 20, 1888. — Decided April 16, 1888.

In order to make a claim against the United States one arising out of a treaty within the meaning of Rev. Stat. § 1066, excluding it from the jurisdiction of the Court of Claims, the right itself, which the petition makes to be the foundation of the claim, must derive its life and existence from some treaty stipulation.

A claim against the United States made under the provisions of the act of June 5, 1882, 22 Stat. 98, c. 195, "reëstablishing the Court of Commissioners of Alabama Claims and for the distribution of unappropriated moneys of the Geneva Award," is not a claim growing out of the treaty of Washington within the sense of the word "treaty," as used in Rev. Stat. § 1066.

The payment of the expenses of the Geneva Arbitration has not been charged by Congress upon the fund received under the award made there.

THE case is stated in the opinion of the court.

*Mr. Assistant Attorney General Howard* for appellant.

*Mr. Samuel Shellabarger* and *Mr. Jeremiah M. Wilson,* for appellees.

MR. JUSTICE LAMAR delivered the opinion of the court.

This is an appeal from the Court of Claims. The suit was brought in that court by the appellees, who were plaintiffs below, to recover from the United States the sum of $5306.71, which sum they alleged, was an unsatisfied part of a judgment recovered by them in the Court of Commissioners of Alabama Claims that had been improperly and illegally withheld from them by the Secretary of the Treasury of the United States and the accounting officers of that Department.

The petition was filed October 4, 1887, and sets forth that on the 24th of October, 1883, the appellees recovered a judg-

ment in the Court of Commissioners of Alabama Claims, including interest, for the sum of $346,982.46, the case in which the said judgment was rendered being one of the second class, of which the said court was given jurisdiction by the act of Congress approved June 5, 1882, 22 Stat. 98, c. 195, entitled " An act reëstablishing the Court of Commissioners of Alabama Claims and for the distribution of unappropriated moneys of the Geneva Award;" that the aggregate amount of judgments of the second class rendered by said court, under the said act of June 5, 1882, including interest, was $16,292,-607.26, and of judgments of the first class, including interest, was $3,350,947.51; that under and in pursuance of the provisions of the act approved June 2, 1886, 24 Stat. 77, c. 416, entitled " An act to provide for closing up the business and paying the expenses of the Court of Commissioners of Alabama Claims, and for other purposes," after crediting to the amount of the said Geneva Award fund named in section 5 of said act, to wit, $10,089,064.96, the amounts authorized by said act, charging it with the amounts in said act directed and specified and deducting from it the amount of the judgments on claims of the first class, to wit, $3,350,947.51, as aforesaid, there remained to satisfy *pro rata* the judgments on claims of the second class the sum of $5,988,663.82; that instead of distributing said last-named sum *pro rata* among the judgment creditors of the second class, as they were required to do under the said act of June 2, 1886, the Secretary of the Treasury and the accounting officers of his Department wrongfully and in violation of said statute first deducted therefrom the sum of $249,168.48, which sum was claimed by them to be available under the act for the purpose of reimbursing the United States for the expenses of the Tribunal of Arbitration at Geneva, which expenditures had been already paid by the United States under and in pursuance of an act of Congress approved December 21, 1871, entitled " An act to make appropriations for expenses that may be incurred under articles 1 to 9, inclusive, of the said treaty between the United States and Great Britain, concluded at Washington, May 8, 1871," 17 Stat. 24, c. 3, and only distributed among said judgment

creditors the sum of $5,739,495.41; that by reason of such deduction the said claimants have been deprived of their proportionate share of the said sum of $249,168.41, to wit, the sum of $5306.71; and that no assignment or transfer of said claim, or any part thereof, or interest therein, has been made by claimants, and that they are justly entitled to the said sum of $5306.71, after allowing all just credits and set-offs, for which said sum they demand judgment.

The answer of the United States consisted of a general denial of all the material allegations in claimants' petition, and the case having been heard before the Court of Claims, the court, upon the evidence, found the facts to be substantially as follows :

(1) October 24, 1883, the plaintiffs recovered judgment in the Court of Commissioners of Alabama Claims for $229,637.63, together with interest, aggregating the sum of $346,982.46, such judgment being one of the second class named in the act of Congress, entitled "An act reëstablishing the Court of Commissioners of Alabama Claims, and for the distribution of the unappropriated moneys of the Geneva Award, approved June 5, 1882," 22 Stat. 98, and duly certified and transmitted to the Secretary of the Treasury as provided by said act.

(2) The aggregate amount of judgments of the second class rendered by said court, reëstablished by said act, including interest, was $16,292,607.26, and the aggregate amount of judgments of the first class, including interest, was $3,350,947.51.

(3) The Secretary of State, in pursuance of the provisions of the fourth section of the act of June 2, 1886, entitled "An act to provide for closing up the business and paying the expenses of the Court of Commissioners of Alabama Claims, and for other purposes," 24 Stat. 77, found, and estimated the value of the furniture named in said section to be $800, and the same was credited to the fund to be distributed under said act ; and the Secretary of State, with the assistance of the clerk of said court, under the provisions of said section 4 of said act, estimated the cost and expenses therein mentioned at $15,000, and the same was charged to said fund.

(4) Under the provisions of section 4 of said act of 1886 the accounting officers of the Treasury, for the purpose of making distribution of the balance of the Geneva Award fund to the judgment creditors, as therein required, stated the account, allowing the proper credits and charging the fund with the amounts directed and specified therein, including therein as chargeable to said fund and deducting therefrom the "expenses of the Tribunal of Arbitration at Geneva" ($249,168.41).

(5) The claimants were paid their proportion of said balance as so stated by the accounting officers, being 35.22760549 per cent of their said judgment, but have received no part of that portion of said fund, which was so retained to reimburse the expenses of the Tribunal of Arbitration at Geneva, $249,168.40. If said last-named sum is not legally chargeable to said fund, the claimants' proportion thereof would be $5306.53, which the defendants have not paid and which they refuse to pay.

The court thereupon decided, as a conclusion of law, that the claimants were entitled to recover the sum of $5306.53, and rendered judgment accordingly.

The main question in this case is a jurisdictional one. On behalf of the United States it is claimed that this is a case growing out of, and dependent upon, the Treaty of Washington, concluded May 8, 1871, between the United States and Great Britain, and proclaimed July 4, 1871, 17 Stat. 863, and that therefore by the express provisions of § 1066, Revised Statutes of the United States, the Court of Claims was prohibited from taking jurisdiction of it. On behalf of the appellees, it is contended that this case is not embraced within the class of cases of which the Court of Claims is prohibited by § 1066, Rev. Stat., from taking jurisdiction. But if that contention cannot be sustained, then it is insisted by appellees that said § 1066 has been repealed by the act of Congress approved March 3, 1887, 24 Stat. 505, c. 359, and is no longer law.

There is no dispute, apparently, as to the correctness of the finding of the court below on the facts in the case; neither is

there any very great contention as to the correctness of the judgment below, if it be found that that court had jurisdiction.

To sustain the view of the case contended for on behalf of the United States, much reliance is placed on the decisions of this court in *Great Western Insurance Company* v. *United States*, 112 U. S. 193, and *Alling* v. *United States*, 114 U. S. 562. We are of opinion, however, that a very broad distinction exists between those cases and this one. In the first case cited, by the allegations of the petition itself, the claim was declared to grow directly out of the treaty, and was thus clearly dependent upon it. The petition based the right of recovery on the provisions of the treaty itself. No statute was invoked, nor was it charged that the United States was directly and primarily liable on the claim. In the language of the court below, which we approve: "In that case the claimant corporation was not seeking to recover under any law of Congress, but was attempting to enforce an alleged implied assumpsit on the part of the United States, growing out of and dependent upon the treaty of Washington, notwithstanding the laws of Congress, which expressly excluded its claim from consideration and from payment out of the fund in controversy. Instead of founding its claim on any law of Congress, as do the present claimants, the company invoked the jurisdiction of this court to set aside and annul the statute provisions."

The Alling case is, in principle, the same as the Great Western Insurance case. In that case the claim on which the suit was based was alleged in the petition to be founded on a treaty stipulation. It had been submitted to the commission authorized and created in accordance with the provisions of the Treaty of July 4, 1868, between the United States and Mexico, 15 Stat. 569, for the adjustment of claims of the citizens of the respective countries against the government of the other for injuries to persons and property, and the award of that commission was that the Mexican government should pay to the United States on account of the claim a specific sum of money out of which the United States might retain a certain amount

on account of certain duties originally paid by claimants but subsequently refunded to them by the United States. The claimants having received the sum specifically awarded to them by the commission, and having been refused the sum retained by the United States, on account of the duties aforesaid, by the Secretary of the Treasury, brought an action in the Court of Claims to recover the amount of said duties. This court held that the Court of Claims had no jurisdiction to entertain such a suit, and ordered the dismissal of the petition, because the claim was founded on and grew out of the treaty with Mexico and was therefore clearly within the provisions of § 1066, Rev. Stat. The reason of the ruling by this court in that decision is plain. The claim there in controversy was expressly recognized as a specific claim by the commission organized under the provisions of the treaty with Mexico, and was, therefore, dependent upon the treaty, and grew directly out of it.

In this case the reverse is true. The treaty of Washington did not recognize this claim as a specific claim. The award of $15,500,000, directed to be paid by Great Britain, was to the United States as a nation. The text of the treaty itself speaks of the "claims on the part of the United States," and in Article 7 the gross sum was "to be paid by Great Britain to the United States." It is not necessary to discuss whether, in the absence of any action by Congress as to the distribution of this fund, there could have been any legal or equitable right in any person or corporation to any portion of it. The fact that the Congress of the United States undertook to dispose of this fund, and to administer upon it, in accordance with its own conceptions of justice and equality, precludes, at least for the purposes of this decision, judicial inquiry into such questions. The claimants had to rely upon the justice of the government, in some of its departments, for compensation in satisfaction of their respective claims; and this compensation the various acts of Congress, heretofore mentioned, provided. The claimant in this case does not seek to recover upon any supposed obligation created by the treaty of Washington, but upon the specific appropriation made in the act of

June 2, 1886. It is under this act that a means of satisfaction of this claim was provided. The claim may, therefore, be said to be "founded upon a law of Congress" within the meaning of § 1059, Rev. Stat., and therefore clearly one of which the Court of Claims could take jurisdiction.

It may be said, in opposition to this view of the case, that, had there been no treaty of Washington, there would have been no fund of $15,500,000 to distribute, the act of June 5, 1882, would never have been passed, and therefore, that the treaty is the basis of all the subsequent legislation, and consequently the basis of this claim; in other words, that, therefore, this claim is "dependent upon and grows out of" the treaty of Washington.

We are of opinion, however, that such a *dependency upon* or *growing out of*, is too remote to come within the meaning of § 1066, Rev. Stat. In our view of the case, the statute contemplates a *direct* and *proximate* connection between the treaty and the claim, in order to bring such claim within the class excluded from the jurisdiction of the Court of Claims by § 1066, Rev. Stat. In order to make the claim one arising out of a treaty within the meaning of § 1066, Rev. Stat., the *right itself*, which the petition makes to be the foundation of the claim, must have its origin — derive its life and existence — from some treaty stipulation. This ruling is analogous to that of the ancient and universal rule relating to damages in common-law actions; namely, that a wrongdoer shall be held responsible only for the *proximate*, and not for the *remote*, consequences of his action.

This disposition of this question renders it unnecessary to consider whether § 1066 has been repealed by the subsequent act of Congress, approved March 3, 1887, (*supra*,) since, if there has been such repeal, it is admitted, on all hands, that the Court of Claims would have jurisdiction of the case.

On the merits of the case, we think there can be no doubt that the accounting officers of the Treasury Department were in error in charging to, and deducting from, the fund the expenses of the Tribunal of Arbitration at Geneva. The payment of those expenses had already been provided for by

Congress by the act of December 21, 1871, 17 Stat. 24, and was never chargeable to this fund.

In the language of the court below : " Section five of the act of June 2, 1886, (*supra,*) fixes the amount of the fund and specifies exactly what shall be deducted from it, and provides that the balance shall be distributed to the judgment creditors. The item thus deducted was not among those thus specified."

We are of the opinion that the claimants are entitled to their share of the amount thus improperly deducted, and the decision of the Court of Claims is therefore

*Affirmed.*