# WETZEL *v.* MINNESOTA RAILWAY TRANSFER COMPANY.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 94.  Argued January 25, 1898. — Decided February 21, 1898.

The decree of the Circuit Court, affirmed by the Circuit Court of Appeals, dismissing the bill in this case on the ground of laches was correct, and that decree is affirmed.

THIS was a bill in equity filed in the United States Circuit Court for the District of Minnesota, by the widow (since remarried) and heirs at law of George W. Remsen against the Minnesota Railway Transfer Company, and over two hundred other defendants, to establish title to one hundred and sixty acres of land situate within the corporate limits of the city of St. Paul, which the complainants contended was held in trust for them by the defendants. The land was estimated to be of the value of over one million dollars.

The facts of the case are substantially as follows: George W. Remsen was a private in Company K, Third Regiment, United States Infantry, and served in the Mexican war. By virtue of his enlistment as a soldier he became entitled, under section 9 of the act of Congress of February 11, 1847, c. 8, 9 Stat. 123, to locate a quarter section of government land, subject to private entry, under the regulations and restrictions established by the Commissioner of the General Land Office. This section further provided that in case of the death of

the soldier his right under the act should descend to his widow and minor children ; and, further, that in the event of the issuance of a land warrant to the minor children of a deceased soldier " then the legally constituted guardian of such minor children shall, in conjunction with such of the children, if any, as may be of full age, upon being duly authorized by the orphans' or other court having probate jurisdiction, have power to sell and dispose of such certificate or warrant for the benefit of those interested."

Remsen died in the military service in October, 1847, and thereafter a land warrant was issued on September 30, 1848, to " Elizabeth Remsen, widow, Harriet A. Remsen, Mary Ann Remsen, John W. Remsen, Elizabeth Remsen and George W. A. Remsen, children, heirs at law, of George W. Remsen, deceased." On October 6, 1848, Mrs. Remsen qualified as guardian of all the minor children of Remsen, (except Harriet A., who was then seventeen years of age,) before the orphans' court for the county of Philadelphia, Pennsylvania.

The land warrant issued to the widow and minor children of Remsen was never located by any or either of them, but was sold and assigned on October 11, 1848, to one Nathan C. D. Taylor, of St. Croix County, Territory of Minnesota, who subsequently located it upon the land in controversy and to whom a patent was issued by the Government on March 20, 1850, and from whom all the defendants in this case, directly or indirectly, claim title.

The sale and assignment of the warrant were made without an order authorizing or confirming it, so far as appears, of the orphans' court appointing Mrs. Remsen as guardian, and were consummated by Mrs. Remsen, acting in her own right and as the guardian of the minor children, with whom was joined Harriet A. Remsen.

It was contended by the complainants in the Circuit Court, as well as in the Circuit Court of Appeals, that the sale and assignment of the land warrant to Taylor were utterly void as to the interests of all the minor children of George W. Remsen, other than Harriet A., who joined in the assignment, because the sale and assignment made by the mother as guar-

dian was not authorized by any order or decree of the orphans' court of the county of Philadelphia.

The Circuit Court dismissed the bill on the ground of laches. 56. Fed. Rep. 919.   Upon appeal that decree was affirmed by the Circuit Court of Appeals for the Eighth Circuit.   27 U. S. App. 594.   Whereupon the complainants appealed to this court.

*Mr. Ernest Howard Hunter* and *Mr. John W. Hinsdale* for appellants.

*Mr. Cushman K. Davis* for appellees.   *Mr. Frank B. Kellogg* and *Mr. C. A. Severance* were on his brief.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

The Circuit Court dismissed this bill on the ground of laches, and the Circuit Court of Appeals affirmed its action.   There can be no doubt whatever of the correctness of this conclusion.   Indeed, a stronger case for the application of the doctrine of laches can scarcely be imagined.   The warrant, which was issued in 1848, entitled the widow and minor children of Remsen to a grant of one hundred and sixty acres of public lands.   This warrant was never located by the persons to whom it was issued, who appeared to have lived in Philadelphia, and to have been in straitened circumstances.

The warrant was sold by them in 1848 to Nathan C. D. Taylor, and there is nothing to show that it did not realize for the widow and heirs its market value.   Indeed, the Court of Appeals found that it was sold for its full value, and the widow testified that the proceeds were applied to the support of herself and the minor children of the deceased soldier.   No fraud in the transaction was alleged or proved.   Nothing appears to impeach the validity of the sale, except the fact that the widow, who had been appointed guardian of all the minor children, except the eldest, did not procure the consent of the orphans' court in Philadelphia to make the sale, as required by the

statute. This was doubtless a technical defect; but it did not show that the warrant was not actually transferred by the widow, acting for herself and her children, (except one who consented in her own behalf,) or that they did not receive full consideration for such transfer.

It is true that the locator and his grantees in possession may have been in law chargeable with the knowledge that an order of the orphans' court was never obtained; but in view of the fact that the widow and heirs of Remsen lived in Philadelphia, a thousand miles from St. Paul, it is scarcely a matter of surprise that they did not investigate this subject with that care which they probably would have exercised had that court been more accessible. Particularly is this so, when it is considered that the officers of the land department, subsequently and after a full review of the facts, decided the warrant to have been properly transferred to Taylor, and issued a patent to him.

It was not the foresight of the widow or heirs of Remsen which caused this warrant to be located upon lands so near to the thriving city of St. Paul, but that of Taylor, who appears to have been a resident of Minnesota; and this suit is a manifest attempt of the complainants to take to themselves the benefit of his action, in which they did not participate and of which they were entirely ignorant for over thirty years after the location had been made.

Conceding that the minors were not affected by laches until they became of age, it appears that the youngest of them reached his majority in 1863, at which time the lands were worth about $1500. Then, if not before, the exercise of diligence became incumbent upon them. It was their duty to have informed themselves and to have acted. It is scarcely possible that they should not have known that their father was a soldier in the Mexican war, and they were chargeable by law with knowledge of the fact that he was entitled to a land warrant. If they did not know this as a matter of fact it was because their mother and eldest sister had failed to inform them of it; and it is inequitable to charge upon the defendants the entire consequences of this ignorance.

Knowledge of the transfer seems to have finally come to them, not through any exertion of their own to inform themselves of the facts, but by an accidental meeting with a lawyer from Minnesota, who had in some way, probably by an examination of the title, become cognizant of the defect in the transfer. It was a mere matter of chance when they would be informed of the defect in the defendants' title, or whether it would ever come to their knowledge at all. To permit them now, after a lapse of forty-four years from the time the warrant was issued, and of thirty years from the time the youngest child became of age, to impeach the transaction, would be an act of the most flagrant injustice to the present holders of the property. This property, which was probably not worth more than one or two hundred dollars at the time of the location of the land warrant, is now estimated to be worth at least a million, and is covered, or partly covered, by houses and business blocks. In the forty-four years that have elapsed since the warrant was issued these lands have been platted and sold in lots to purchasers, who were probably ignorant in fact, if not in law, of any defect in the title, and relied upon the validity of the transfer from the widow and heirs of Remsen and upon the patent from the United States, which appears to have been regularly issued after an examination of all the facts attending the granting, transfer and location of the land warrant by the officers of the land department. While the fact that the complainants were ignorant of the defect in the title and were without means to prosecute an investigation into the facts may properly be considered by the court, it does not mitigate the hardship to the defendants of unsettling these titles. If the complainant may put forward these excuses for delay after thirty years, there is no reason why they may not allege the same as an excuse after a lapse of sixty. The truth is, there must be some limit of time within which these excuses shall be available, or titles might forever be insecure. The interests of public order and tranquillity demand that parties shall acquaint themselves with their rights within a reasonable time, and although this time may be extended by their actual ignorance, or want of means, it is by no means illimitable.

If any authority were needed for the action of the courts below in dismissing the bill upon the ground of laches, it would be found in *Felix* v. *Patrick*, 145 U. S. 317. In that case a half-breed woman, belonging to the Sioux nation, received in 1857 a certificate of land scrip, issued under the then existing law, which provided that no "transfer or conveyance of any of said certificates shall be valid." Notwithstanding this provision the woman sold the scrip and executed a blank power of attorney, also a quitclaim deed in blank, in which the name of the attorney, the description of the land and the name of the grantee were afterwards filled in by the grantee, who had caused the papers to be executed. The grantee thereafter located a tract of land, and subsequently Congress confirmed his title to the same. The half-breed was ignorant of all these facts until 1887. In 1888, she having died in the meantime, her representatives filed a bill in equity against the grantee, charging him with having fraudulently obtained the power of attorney and the quitclaim deed, but failing to state when and how the frauds were discovered. It was held that as the bill did not state the time when the frauds were discovered, so that the court might clearly see whether they could have been discovered before, the bill was fatally defective; and, that under the circumstances, it would be inequitable to disturb the title of the defendants, who held adversely as against the half-breed woman, and not by virtue of the power of attorney or quitclaim deed, which passed no title, or by the confirmatory act of Congress which granted no additional rights.

Upon the facts disclosed in this record, it is entirely clear that the decree of the court below was correct, and it is therefore

*Affirmed.*