### CLARK v. CITY OF CHICAGO, ILL., et al.
### No. 5040.

Circuit Court of Appeals, Seventh Circuit.
April 12, 1934.

H. S. Hicks, of Rockford, Ill., and Essington & McKibbin and Walter E. Beebe, all of Chicago, Ill., for appellant.

William H. Sexton, Corp. Counsel, and Albert H. Veeder, Sp. Asst. Corp. Counsel, both of Chicago, Ill., for appellees.

Before ALSCHULER, SPARKS, and FITZHENRY, Circuit Judges.

SPARKS, Circuit Judge.

Appellant filed a bill in equity asking that certain property in the possession of the city of Chicago be declared to be held in trust by it, that a new trustee be appointed to carry out the terms of the trust, that the city be required to account for all moneys received by it in liquidation of the indebtedness of David A. Gage to it, and that any money remaining over be paid to appellant as sole surviving heir of Gage.

The facts which gave rise to appellant's alleged cause of action began in 1873 when her father was city treasurer of the city of Chicago. Upon the expiration of his term of office, December 16, 1873, it was found that there was a deficit in his accounts amounting to approximately $500,000. This deficit arose out of certain illegal loans of the funds of the city to banks which closed during the panic of 1873. In order to liquidate the indebtedness, Gage turned over all his property in trust for the benefit of the city. The real property was conveyed by a deed of trust executed by Gage and his wife, December 27, 1873, to George Taylor as trustee. It provided that the trustee take over the possession and control of all the property, collecting the rents and paying the taxes, and, under the direction and with the concurrence of the comptroller of the city of Chicago, sell the properties as soon as possible upon whatever terms seemed best to the trustee and comptroller, applying all rents and profits as well as the proceeds of the sale to the liquidation of the indebtedness. There was a further trust provision that upon the satisfaction of the entire indebtedness, if any pieces of the real property or any proceeds derived in any way from the property remained in the possession of the trustee, he should turn them back to Gage or his heirs. The instrument also provided that if the properties should not be sold within eight months, the comptroller should have the power to order a peremptory sale on such terms as he considered best for the interests of the city, and that if for any reason Taylor should be unable to act in accordance with the terms of the trust deed, one John De Koven should become the successor in trust. The property conveyed by the deed included several parcels in the city, and one, known as the Gage farm, a 254-acre tract, outside the limits of the city.

The personal property of Gage was conveyed to the same trustee by a deed of assignment of the same date authorizing him to collect all bonds, bills, notes, accounts and choses in action or to sell them or any part of them as seemed for the best interests of the city, and apply the proceeds on the debt. The assignment also authorized the trustee, with the concurrence and consent of the comptroller, to exchange any of the securities or evidences of indebtedness for other securities, or for lands or other property, real or personal, all of which should be subject to the same provisions as the original properties conveyed by the assignment.

Taylor accepted the trust and took possession of all the properties, real and personal, conveyed to him by the two instruments. He sold part of the real estate pursuant to the terms of the trust deed. He also acquired another parcel of real property known as the Brookfield tract as the result of foreclosure proceedings based on a series of bonds which came into his possession under the assignment of personal property.

By a suit brought by the city against Gage and his sureties in 1877, the amount of the indebtedness was determined to be $507,703.

A few years after the conveyances to Taylor, Gage moved to Colorado where in 1878 he filed a voluntary petition in bankruptcy, listing as a liability, the claim of the city of Chicago in the amount of $507,703, and including in his inventory all the real property deeded in trust to Taylor, with a reference to that trust and the purpose for which it was created. The Register in Bankruptcy on October 19, 1878, executed an assignment of all property of Gage in which he had any interest on the date of September 6, 1878, to one Mason B. Carpenter who on December 13, 1878, executed a quitclaim deed on the Gage tract to one Alexis M. Lay. On May 19, 1881, Lay and his wife gave a quitclaim deed for the Gage tract to the city of Chicago. Gage was granted a discharge in bankruptcy January 28, 1879.

In July, 1880, the city of Chicago secured a tax deed to the Gage farm.

In 1881 suit was filed by the city against Taylor and Gage and others in the Superior Court of Cook County to compel Taylor to execute the terms of the trust deed. Service was had on all parties, and all were represented in the proceedings by counsel. The decree entered June 16, 1881, ordered Tay-

lor to sell the Gage farm according to the provisions of the trust deed, and provided that the city might become a purchaser at the sale for the protection of its own interest. In accordance with this decree, on July 2, 1881, Taylor executed a deed conveying to the city the Gage tract of 254 acres for a recited consideration of $254,000, which was said in the deed to be the highest and best offer the trustee could obtain for the land and premises thereby conveyed. This value had been placed upon the tract earlier in the year as the result of an appraisement by seventeen citizens of the city of Chicago. On the same date, July 2, Taylor also executed a deed conveying to the city the sixty-five acre Brookfield property for a recited consideration of $52,000 as appraised by the same group of men. The city immediately entered into possession of both tracts and has used them ever since the conveyances. The Gage tract was rented at first for farming purposes, and later a city nursery was established there for the growing of trees and shrubs for the use of the various city parks. Some litigation followed the conveyance of the Brookfield tract. A compromise was effected which gave the city an undivided half of the entire tract. Partition proceedings were had in 1906 which resulted in the obtaining by the city of the entire interest in thirty-two acres of the tract. In 1914 the city conveyed to itself in trust for the use of the schools a seventy-five acre portion of the Gage property to be used for a school for delinquent boys. The city has paid all taxes and special assessments which have been levied on either of the properties since they came into possession of them.

In 1893, suit was filed in the Superior Court of Cook County in the name of Eliza M. Gage, widow of David A. Gage, and Clara Gage Clark, appellant in the case at bar, against the city of Chicago. The records show that the case was later dismissed for want of prosecution. The files have been lost, hence it is not possible to ascertain what was the nature of the alleged cause of action. A second suit was filed in the Circuit Court of Cook County in 1906 in the name of appellant and two nieces of her deceased stepmother, Eliza Gage. Before this latter suit was filed a demand was served upon the city signed by appellant herself. To this demand were attached copies of the deed of trust and the deed of assignment. The city of Chicago. its comptroller, and its treasurer were named parties defendant. The amended bill of complaint among other facts set forth the deed of trust and the deed of assignment executed by Gage to Taylor in 1873, and the fixing of the indebtedness at $507,-704, and alleged that the property conveyed by the two instruments was worth over a million dollars at the time of the conveyances, hence greatly in excess of the indebtedness, and that the conveyance by Taylor to the city in 1881 was subject to the trust which still remained unenforced. It prayed an accounting of the entire trust estate and that any property of the trust still remaining in the possession of the city be sold and the balance turned over to the complainants. The city filed answer denying that any real estate was ever received or held by it in trust, averring that the two conveyances of Taylor were under authority of the decree of the Superior Court, for an expressed consideration of $306,000, although the value of the two tracts at the time did not exceed $175,-000. The answer also set out the facts of (1) the filing of the bill in equity in 1893 which asked that appellant and her stepmother be permitted to redeem the premises conveyed by Taylor to the city; (2) the suggestion of death of the stepmother, and the order that the cause proceed in the name of appellant; and (3) the dismissal for want of prosecution in 1897. The suit filed in 1906 was also dismissed for want of prosecution.

Appellant filed the bill of complaint in the case at bar in June, 1929, forty-eight years after the conveyances of the Gage and Brookfield tracts by Taylor to the city. She challenged the validity of those conveyances on the ground that:

(1) The city as a municipal corporation had no power to take title to or hold real estate not needed by it for corporate purposes.

(2) Under the provisions of the trust deed the city was in fact in the position of a joint trustee of the property with relation to Gage and his heirs, hence had no right to take title to the property itself, and the Superior Court of Cook County had no jurisdiction to confer upon it that right or power.

(3) At the time the deeds were executed by the trustee, Taylor, his mental condition was such that he did not have the capacity to perform such acts, as indicated by the fact that he died a short time thereafter, suffering from a brain tumor which had rendered him totally incompetent for several months.

She argued, therefore, that these two pieces of property which were still in the possession of the city were still impressed with the original trust, and. were still subject to sale in accordance with the terms of that trust, and she, as the heir of Gage, was

still entitled to an accounting of all the amounts which had been received by the city from the inception of the trust, including the proceeds of the sale, which she asked the District Court to order, and to have the balance, if any, turned over to her.

In reply the city argued that the conveyances by Taylor were valid, denying the existence of any fiduciary relationship between the city and Gage, or any prohibition on the part of the city to own property outside its corporate limits, and asserting that Taylor's act in executing the deeds was a purely ministerial one, requiring the exercise of no discretion. It also argued that the decree of the Superior Court was binding upon all the parties including Gage and his heirs, since service was had upon all, and all were represented in the litigation by counsel. It also urged that Gage lost whatever interest he had remaining in the property as a result of the bankruptcy proceedings and the assignment of his interest to his assignee in bankruptcy, and that if there ever had been any cause of action, it had been barred by laches and by limitation, and could not be brought forty-eight years after the execution and recording of the deeds alleged to be invalid, and the entry into possession by the city.

In our view of this case, the validity of these last defenses renders it unnecessary for us to consider any of the other defenses. Appellant sought to parry the effect of these defenses by urging that she had no knowledge of her rights until the year 1929, hence could not be considered negligent in not urging them at an earlier date, and that the possession by the city was a breach of its fiduciary relationship to her, hence the statute of limitations was not effective against her. She testified that the first information she had as to the possibility of any cause of action was received from a Chicago real estate man who made a trip from Chicago to Kansas City where appellant was residing at the time, in order to inform her that she had some interest in the property and find out what she knew about it and why the land was allowed to lie idle. She stated that she had no knowledge whatsoever of the two actions filed in her name in 1893 and 1906, both of which had been dismissed for want of prosecution, and claimed that the demand on the city dated August 11, 1906, and admittedly bearing her signature, had been signed by her under the impression that it related to some mining interests in Denver, although the demand was written on a single sheet of paper addressed to the City of Chicago, the Mayor, and the Comptroller, and recited on its face that it was a demand for an accounting arising out of the trust deed transaction. We do not agree that evidence of knowledge can be so lightly explained away. The record of the suit filed in 1893, the demand served in 1905, the suit filed in 1906, are all evidence of actual knowledge on the part of appellant of whatever rights are attempted to be adjudicated in the case at bar. No evidence was introduced indicating the concealment of any facts. The instruments were all matters of public record, to which appellant or her representatives had access at any time they desired to investigate her possible rights. At the time the deeds were executed by Gage to Taylor in 1873, appellant was a grown woman, twenty-five years of age, hence no question of the rights of a minor heir enter into this controversy.

Counsel for appellant states in his brief: " * * * he owed a debt to the City of Chicago and the amount had been fixed. It was beyond the then value of the property and of the securities which were held for the benefit of such City, and Gage was then apparently entitled to but one thing, which was to have the Trust Deed carried out in accordance with its terms. Had this been done, there would now be no right in Gage or his heirs to raise any questions of any character, but the trust was not executed and, in that regard, Gage's rights were violated."

It seems to have been understood by all the parties at that time that the effect of the two conveyances to Taylor was to divest Gage of all right, title, and interest in any of his property, for the benefit of the city whose funds he had misused, and the form of the conveyances was adopted because they seemed to afford the simplest way of carrying out that purpose. There was no provision in the instruments prohibiting the city from taking title to the property in its own name. It was the right of the *city* to have the terms of the trust carried out, and the record discloses no facts which could be construed as creating a fiduciary relationship between the city and Gage. The occurrence of possible technical errors in connection with the carrying out of the provisions of the trust could give rise to no cause of action in favor of Gage or of appellant whose only rights are those which are derived through him. Appellant herself seems to have understood that the effect of the transaction in 1873 was to transfer all her father's property to the city in liquidation of his debt. She testified that he acknowledged that he owed the mon-

ey to the city, and that he turned over all his property to the city in order to pay the debt.

■ The very technical basis of the alleged right, and the manner in which it came to the attention of the claimant render the case somewhat analogous to the case of Wetzel v. Minnesota Railway Company, 169 U. S. 237, 18 S. Ct. 307, 309, 42 L. Ed. 730, where, forty-four years after the sale of a land warrant issued to the widow and minor children of a soldier they attempted to establish title to the land, which had been located by virtue of the warrant, on the ground that the sale of the warrant had been without authorization of the probate court. The Court stated that this was doubtless a technical defect, but that it did not show that the warrant was not actually transferred by the widow acting for herself and her children, or that they did not receive full consideration for the transfer. "Knowledge of the transfer seems to have finally come to them, not through any exertion of their own to inform themselves of the facts, but by an accidental meeting with a lawyer from Minnesota, who had in some way, probably by an examination of the title, become cognizant of the defect in the transfer. It was a mere matter of chance when they would be informed of the defect in the defendants' title, or whether it would ever come to their knowledge at all. * * * The interests of public order and tranquillity demand that parties shall acquaint themselves with their rights within a reasonable time, and although this time may be extended by their actual ignorance, or want of means, it is by no means illimitable." It is true that in that case the tract involved lay within the limits of a populous city and had been divided and sold to a large number of people whose rights intervened, and the value had increased from $150 at the time of the sale to over a million dollars at the time of the action. However, we think that the language of the Court is applicable to the case at bar in spite of those additional facts. The Court has indicated in numerous cases that it is loath to disturb existing property rights in the absence of a showing of fraud or concealment that would excuse the lapse of time after the cause of action accrued. Hammond v. Hopkins, 143 U. S. 224, 12 S. Ct. 418, 36 L. Ed. 134; Godden v. Kimmell, 99 U. S. 201, 25 L. Ed. 431; Felix v. Patrick, 145 U. S. 317, 12 S. Ct. 862, 36 L. Ed. 719; Speidel v. Henrici, 120 U. S. 377, 7 S. Ct. 610, 30 L. Ed. 718. In all of these cases either an express or a constructive trust was involved, and in all of

them the Court refused to recognize the rights of the beneficiaries because of their delay in pressing their rights.

■ In the case at bar it was established that the city had been in open, notorious, and adverse possession of the tracts for a period long over twenty years, under titles created by conveyances from the trustee under order of a court of competent jurisdiction, acquiesced in by the appellant's predecessor in title for a period of eight years up to his death in 1889, and by appellant herself for a period of forty years thereafter. Under those circumstances we think appellant is in no position to ask for a further sale and an accounting at this time, and we therefore conclude that the District Court was correct in ordering a dismissal of the appellant's petition.

Decree affirmed.