**DRIER v. UNITED STATES.**

No. 47162.

Court of Claims.

April 7, 1947.

Bernard J. Gallagher, of Washington, D. C. (M. Walton Hendry, of Washington, D. C., on the brief), for plaintiff.

Edward L. Metzler and John F. Sonnett, Asst. Attys. Gen., for defendant.

Before WHALEY, Chief Justice, and JONES, MADDEN, WHITAKER, and LITTLETON, Judges.

JONES, Judge.

This case is before the court on defendant's motion to dismiss the amended petition on three stated grounds, (1) want of jurisdiction in this court to hear and determine· the matters therein set forth, (2) because of an action pending in another court based.

upon the same claim contrary to section 154 of the Judicial Code, 28 U.S.C.A. § 260, and (3) because the amended petition fails to state a cause of action against the United States.

In substance the amended petition alleges that the Congress enacted Private Law 509, 54 Stat. Part 2, 1341, approved July 19, 1940, whereunder plaintiff was to be paid immediately by the Secretary of the Treasury the sum of $160,000, together with interest thereon at the rate of 5 percent per annum from January 1, 1920; that there was in the German special deposit account sufficient funds to pay plaintiff when Private Law 509 was passed; that contrary to the provisions of that act defendant made only partial payments to plaintiff on a pro rata basis and paid out to others money which defendant owed plaintiff pursuant to the provisions of said act; that there is due and owing by defendant to plaintiff, after crediting against accumulated interest the payments made to plaintiff, the sum of $191,771.98, with interest on $160,000 at 5 percent from June 30, 1943; and that defendant had at the time of filing of the amended petition sufficient funds in its German special deposit account out of which to pay plaintiff the amount claimed. Private Law 509 is set forth in full in the amended petition as follows:

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That, notwithstanding the provisions of section 4(c) of the Settlement of War Claims Act of 1928, the Secretary of the Treasury is hereby authorized and directed to pay, out of the German special deposit account in the Treasury of the United States, to Katharine M. Drier, an American citizen, formerly resident in Germany, the sum of $160,000, together with interest thereon at the rate of 5 per centum per annum from January 1, 1920, being the amount due said Katharine M. Drier pursuant to an agreement between the United States of America and the German Government under which all the claims of the said Katharine M. Drier against the German Government were settled and adjusted: *Provided,* That payment of such sum of $160,000 and interest thereon as herein provided shall be made as if an addi-

tional award in the sum of $160,000 with interest at 5 per centum per annum from January 1, 1920, had been entered by the Mixed Claims Commission, United States and Germany, on behalf of Katharine M. Drier.

"Approved, July 19, 1940."

The theory of plaintiff's claim appears to be that since the Secretary of the Treasury erroneously, as plaintiff contends, interpreted the act to mean that plaintiff was entitled only to payment in accordance with the priority provisions of section 4(c) of the Settlement of War Claims Act of 1928, 45 Stat. 254, 260, and has made only partial payment to plaintiff on a pro rata basis with other claimants against the German special deposit account notwithstanding plaintiff's protest, judgment should be granted by this court against the United States for the amount alleged to be owing and unpaid.

Defendant contends that this court is without jurisdiction of plaintiff's claim because it is against the German government, the German special deposit account, and the Secretary of the Treasury, and that Congress has recognized no liability therefor.

The language of Private Law 509 refutes the idea that plaintiff's claim is against the German government. The sum the Secretary of the Treasury is directed to pay to her out of the German special deposit account is described as "being the amount due said Katharine M. Drier pursuant to an agreement between the United States of America and the German government under which all the claims of the said Katharine M. Drier against the German Government were settled and adjusted."

The German special deposit account was created by section 4(a) of the Settlement of War Claims Act of 1928, supra, to receive funds transferred by the Alien Property Custodian under the provisions of the Trading with the Enemy Act, 50 U.S.C.A.Appendix, § 1 et seq., also moneys to be appropriated by the Government for the payment of claims of German nationals, and moneys received and to be received by the United States in respect of claims of the United States against Germany on account of the awards of the Mixed Claims Commission. The United States owns the funds

in the German special deposit account absolutely, and Congress has the right to determine their disposition as it sees fit. United States v. Chemical Foundation, 272 U.S. 1, 9–11, 47 S.Ct. 1, 71 L.Ed. 131.

█ Under the terms of an agreement dated August 10, 1922, 42 Stat. 2200, between the United States and Germany, there had been created a Mixed Claims Commission for the purpose of passing upon claims of United States citizens against the German Government. By means of the Settlement of War Claims Act of 1028, Congress had provided the machinery for distributing to the holders of awards of said Commission the moneys comprising the German special deposit account including "all money * * * received, whether before or after the enactment of this Act, by the United States in respect of claims of the United States against Germany on account of the awards of the Mixed Claims Commission". Private Law 509 provided for plaintiff's participation in this German special deposit fund "as if an additional award in the sum of $160,000 with interest at 5 per cent per annum from January 1, 1920, had been entered by the Mixed Claims Commission." Plaintiff contends that her claim is, therefore, one "founded upon a law of congress" which this court has jurisdiction to hear and determine under section 145 of the Judicial Code, 28 U.S.C.A. § 250.

Plaintiff relies upon United States v. Weld, 127 U.S. 51, 8 S.Ct. 1000, 1003, 32 L.Ed. 62, as conclusive authority that this court has jurisdiction of the instant claim as one "founded upon a law of congress" within the meaning of those words as used in section 145 of the Judicial Code. The statute under which the plaintiff in the Weld case was claiming the right to recover against the United States in the Court of Claims was enacted for the purpose of closing up the business of the Court of·Commissioners of Alabama Claims, and directed how the fund remaining in the Treasury should be disposed of, what deductions should be made therefrom and how they should be determined, and how the account should be stated for the purpose of distribution of the fund among the holders of judgments of the Court of Commissioners of Alabama Claims. In making distribution of substantially the entire balance of the fund these officers charged against the fund out of which the claimant's judgment was payable $249,168.41, expenses of the tribunal of arbitration at Geneva. The claimant sought to recover his proportionate share of that amount, some $5,000, as an improper deduction by the accounting officers from the fund to be distributed.

The Court of Claims gave plaintiff judgment for this amount which was found to have been improperly deducted.

The Supreme Court in reviewing and affirming the judgment used the following language: "It is not necessary to discuss whether, in the absence of any action by congress as to the distribution of this fund, there could have been any legal or equitable rights in any person or corporation to any portion of it. The fact that the congress of the United States undertook to dispose of this fund, and to administer upon it, in accordance with its own conceptions of justice and equality, precludes, at least for the purposes of this decision, judicial inquiry into such questions. The claimants had to rely upon the justice of the government, in some of its departments, for compensation in satisfaction of their respective claims; and this compensation the various acts of congress, heretofore mentioned, provided. The claimant in this case does not seek to recover upon any supposed obligation created by the treaty of Washington, but upon the specific appropriation made in the act of June 2, 1886. It was under this act that a means of satisfaction of this claim was provided. The claim may, therefore, be said to be 'founded upon a law of congress,' within the meaning of section 1059, Rev.St. [28 U.S.C.A. § 250], and therefore clearly one of which the court of claims could take jurisdiction."

This decision of the Supreme Court is authority for holding that in so far as these funds were taken over by the Government and within the limit of the amount of the German special deposit account the Government of the United·States became obligated to pay out such funds in accordance with the statute enacted by the Congress, failing which it became liable for the amount of

any such fund as may have been improperly diverted.

The third ground of defendant's motion to dismiss is that plaintiff's petition fails to state a cause of action. This raises the direct issue as to whether by the terms of Private Law 509 plaintiff is entitled to payment in full of the sums designated therein without regard to the provisions of the Settlement of War Claims Act of 1928.

Section 4(c) of that act authorizes and directs the Secretary of the Treasury, out of the German special deposit account, and "in the following order of priority",

(1) to make the payments of expenses of administration, authorized elsewhere in the act,

(2) to make so much of each payment authorized by subsection (b) of section 2 (relating to awards of the Mixed Claims Commission), as is attributable to an award on account of death or personal injury,

(3) to make each payment authorized by subsection (b) of section 2, not exceeding $100,000 and not payable under (2) above,

(4) to pay $100,000 in respect of each payment authorized by subsection (b) of section 2, if the amount authorized exceeds $100,000 and is not payable under (2) above, and

(5) to make additional payments authorized by subsection (b) of section 2, in such amounts as will make the aggregate payments (authorized by such subsection) under this paragraph and paragraphs (2), (3), and (4) of this subsection equal to 80 per centum of the aggregate amount of all payments authorized by subsection (b) of section 2. Payments under this paragraph shall be prorated on the basis of the amount of the respective payments authorized by subsection (b) of section 2 and remaining unpaid.

Additional paragraphs of section 4(c) continue the order of priority of payment with provisions for payments on account of tentative awards by the arbiter to German nationals, accrued interest provided for in other parts of the act, payments necessary to complete certain classes of payments in full, ending with payments into the Treasury as miscellaneous receipts of any funds remaining in the German special deposit account after the various payments of a higher priority as enumerated above.

Plaintiff's position is that these provisions of the Settlement of War Claims Act of 1928 were inapplicable to the payment of $160,000, plus interest, from the German special deposit account which Private Law 509 directed the Secretary of the Treasury to make to her, because the enacting portion of the act directed the Secretary to pay her the money "notwithstanding the provisions of section 4(c) of the Settlement of War Claims Act of 1928". In determining the proper meaning to be given to the language referred to we may not ignore the proviso which follows the language in question, "that payment of such sum * * * shall be made as if an additional award * * * had· been entered by the Mixed Claims Commission". We must, as stated in Jones v. United States, 50 Ct.Cl. 344, 356, look into the entire enactment and so construe it as to make all parts of it harmonize, if possible, and thus give meaning to each part."

It seems to us that plaintiff's complaint against the interpretation given to Private Law 509 by the Secretary of the Treasury stems from her erroneous conception of the meaning which fairly may be given the word "notwithstanding", and her consequent belief that the Secretary's interpretation in effect ignored completely the portion of the enacting clause referring to the provisions of section 4(c) of the Settlement of War Claims Act of 1928. Ascribing a strong meaning to the "notwithstanding" clause plaintiff finds it necessary to avoid the resulting incongruity between that clause and the proviso which follows it by having recourse to the general rule of construction that a proviso or exception which restricts the general scope of an act must be construed strictly so as not to take out of the enacting clause any case which does not fall fairly within the terms of the proviso. Pursuing the principle, plaintiff concludes that the proviso clause requiring that payment to plaintiff be made as if an additional award had been entered by the Mixed Claims Commission, may be so reduced or restricted in meaning as to have reference only to such of those provisions of the Settlement of War Claims Act of 1928 regard-

ing payment of awards as are found outside of section 4(c) of said act.

In American Bosch Magneto Corporation v. United States, 6 F.Supp. 455, 458, 79 Ct.Cl. 195, 202, we stated: "It is the duty of the court to so construe it, [meaning the statute] if possible, that no clause, sentence, or word shall be superfluous, void, or insignificant, [Inhabitants of] Montclair Twp. v. Ramsdell, 107 U. S. 147, 2 S.Ct. 391, 27 L.Ed. 431, giving to all words used in the section their proper signification and effect, United States v. Lexington Mill & Elevator Co., 232 U.S. 399, 34 S.Ct. 337, 58 L.Ed. 658, L.R.A.1915B, 774, and presuming that the Congress has used no superfluous words. Platt v. Union Pacific Railroad Company, 99 U.S. 48, 25 L.Ed. 424." The construction of Private Law 509 which plaintiff would have us make would not only give undue effect to the "notwithstanding" clause, but would reduce the proviso clause to insignificance.

By virtue of the private act for plaintiff's relief the Secretary of the Treasury is authorized and directed to pay plaintiff a specified sum out of the German special deposit account, on account of certain claims she had against the German Government, but which were settled and adjusted pursuant to agreement between said government and the United States, said payment to be made despite the fact that section 4(c) of the Settlement of War Claims Act of 1928, under which alone the Secretary had authority to make payments therefrom, contained no provision for payment of plaintiff as a non-holder of an additional award from the Mixed Claims Commission. In seeking payment of the specified amount from the German special deposit fund, however, plaintiff is to participate therein only as though she were an award holder, with such restrictions and limitations upon the payment to her as would be imposed upon regular award holders. This we think to have been the true intent of Congress as revealed from the plain language of Private Law 509.

We might well rest our discussion with this ultimate conclusion that Private Law 509 is free from ambiguity, and that its clear meaning is that which the Secretary of the Treasury has given to it. This we would be inclined to do were it not for the fact that in the amended petition our attention is directed to certain excerpts from House Report No. 2501, War Claims Committee, and Senate Report No. 1300, Committee on Foreign Relations, 76th Congress, 3rd Session, which the petition alleges reveal the intention of Congress "that upon the passage of this act plaintiff should receive immediately out of the German Special Deposit Account the amount therein stated and that the interpretation placed upon the Act by the Secretary of the Treasury is contrary to this intent" (page 3 of amended petition).

We have examined with care not only the Committee Reports to which reference is made, but the entire legislative history of Private Law 509 as well. We have found nothing therein but confirmation of the conclusion reached from the face of the act itself. Senate Bill 3097 (which later became Private Law 509) in the form in which it was first introduced by its sponsor, Senator Austin, in the 76th Congress, (86 Cong.Rec. 264) and as reported back to the Senate without amendment by the Foreign Relations Committee (id. p. 2615; Senate Report No. 1300) read exactly as does the present act, except for the omission of the entire proviso, and except for the presence of the word "forthwith" immediately following the words "the Secretary of the Treasury is hereby authorized and directed to pay". As revealed by Senator Austin's statement on the floor of the Senate on April 12, 1940, considerable opposition to the proposed bill developed on behalf of the American holders of awards from the Mixed Claims Commission, United States and Germany, which Senator Austin sought to meet by the amendment submitted to and adopted by the Senate on that date (id. pp. 4405–14). This involved striking out the word "forthwith" following the words "to pay", and by adding to the bill as it would then read the following:

*Provided,* That payment of such sum of $160,000 and interest thereon as herein provided shall be made as follows:

(1) There shall be paid forthwith to the said Katharine M. Drier an amount which bears the same proportion to such sum and interest thereon as the amounts heretofore

paid out of such special deposit account to claimants on whose behalf awards have been made by the Mixed Claims Commission, United States and Germany, bear to the total awards so made to such claimants; and

(2) Payment of the balance of such sum and interest thereon shall be prorated on the basis of the amount of the respective payments authorized by section 2(b) of the Settlement of War Claims Act of 1928, as amended, and remaining unpaid.

In offering this amendment Senator Austin gave the following explanation of the effect of the proposed amendment. After stating, in response to a question, that those award holders who were opposing the proposed bill had been paid a proportion of their claims, the Senator said (id. p. 4411) My amendment would permit Mrs. Drier to receive forthwith the amount of her claim which is proportionate to what other claimants have received, which would not give her any priority in time over the poor lawyers and their clients; and then, in order to satisfy their cupidity, let her wait for the *remainder* of her little claim until they receive the rest of theirs, *letting her take in exactly the same ratio* as they take [italics supplied].

Following passage of the bill in its amended form by the Senate, and transmittal to the House of Representatives, it was referred to the Committee on War Claims of the House (id. p. 4563) on April 15, 1940. In response to a request that the Committee be furnished with a report with respect to S. 3097, the Treasury Department by letter of May 3, 1940, advised the Chairman of the Committee in part as follows (House Report No. 2501):

It is our view that the language of the bill is unclear as to the calculation of the amount to be paid Mrs. Drier and the manner of payment.

If it is the intention of the bill that payment should be made to Mrs. Drier as if an additional award in the amount of $160,-000 with interest at 5 per cent per annum from January 1, 1920, had been entered by the Mixed Claims Commission, United States and Germany, on behalf of Mrs. Drier, the Treasury Department feels that

the bill might well be clarified to so indicate.

The letter then sets forth, word for word, the language now found in Private Law 509. S. 3097, amended by the House Committee in the exact manner suggested by the Treasury Department, was passed by the House of Representatives on July 11, 1940 (86 Cong.Rec. 9515) and concurred in by the Senate the same date (id. p. 9500).

This legislative history further strengthens the conclusion that the interpretation placed upon the special act by the Secretary of the Treasury was the correct one. The petition, therefore, fails to state a cause of action.

This conclusion makes it unnecessary for us to pass upon the second ground named in the motion to dismiss.

The defendant's motion to dismiss the amended petition is sustained and the petition is dismissed.

It is so ordered.

MADDEN, WHITAKER, and LITTLETON, Judges, concur.

WHALEY, Chief Justice, took no part in the decision of this case.