James W. McCROCKLIN and the Board of Trustees of Racine College, Plaintiffs,

v.

Henry H. FOWLER, in his capacity as Secretary of the Treasury of the United States; the Secretary of the Treasury; William T. Howell, in his capacity as Deputy Treasurer of the United States; and the Treasury Department, Defendants.

No. 67–C–221.

United States District Court
E. D. Wisconsin.

June 5, 1968.

42

Gerald T. Flynn, Racine, Wis., for plaintiffs.

James B. Brennan, U. S. Atty., Milwaukee, Wis., for defendants.

## DECISION ON MOTIONS

MYRON L. GORDON, District Judge.

This action was commenced by the plaintiff, James W. McCrocklin, against the Secretary of the Treasury of the United States and the Deputy Treasurer. The Board of Trustees of Racine College has been joined as an involuntary plaintiff, pursuant to rule 19(a), Federal Rules of Civil Procedure.

The second amended complaint alleges that Charles Durkee owned certain paramount lien bonds issued to finance the construction of the Pacific railroads; that the railroads, pursuant to acts of Congress (20 Stats. 56, May 7, 1878 and 24 Stats. 488, March 3, 1887), deposited funds for the retirement of the bonds into a sinking fund held in the U. S. Treasury, and that the funds are carried as trust assets by the Treasury. It is alleged that Charles Durkee personally

deposited his bonds with the Treasury during the years 1868–1869 as security for the completion of the railroads.

The plaintiff contends that the defendants are trustees by virtue of express and statutory trusts, and that their failure to account to the beneficiaries constitutes an unlawful taking without just compensation in violation of the 5th amendment. The plaintiff requests a determination that Charles Durkee was the owner of the bonds in question and also seeks an accounting.

Charles Durkee died in 1870, leaving his estate to his wife, Caroline. Caroline Durkee died in 1911, leaving her entire residuary estate to the Board of Trustees of Racine College. Neither Charles nor Caroline Durkee's will mentions the bonds which are the subject of this lawsuit. On November 6, 1912, the Kenosha county court awarded the sum of $6,904.58 to the Board, said sum being accepted by the Board on the same day.

The plaintiff avers that the Board assigned to him a 25% interest in any funds which might be recovered from the Treasury; the remaining 75% is owned by the Board.

The defendants have moved for summary judgment on the grounds of (1) *res judicata*, (2) laches, and (3) collateral estoppel. The defendants have also moved to dismiss for failure to state a claim upon which relief can be granted and for failure to join an indispensable party. No answer has been filed; the record consists of the complaint, affidavits, and exhibits filed by both parties.

## I. RES JUDICATA

On May 3, 1945, Mr. Foulkes was appointed administrator of the estates of Charles and Caroline Durkee by the Kenosha county court. In 1964, Mr. Foulkes commenced an action in the United States court of claims to recover the funds allegedly held in trust by the Treasury for the estate of Caroline Durkee. The suit was brought in Mr. Foulkes' representative capacity, and the United States was the named defendant.

The court of claims granted the government's motion for summary judgment and dismissed the suit, holding the claim to be barred by the statute of limitations (28 U.S.C. § 2501) and also by laches. Foulkes, Administrator v. United States, 173 Ct.Cl. 1179 (1965), cert. den. 383 U.S. 944, 86 S.Ct. 1200, 16 L.Ed.2d 207 (1966).

■ A judgment on the merits, rendered in a former suit between the same parties or their privies, on the same cause of action, by a court of competent jurisdiction, operates as a bar in a subsequent suit. Liddell v. Smith, 345 F.2d 491, 493 (7th Cir. 1965). The prior suit in the court of claims was on the merits; the cause of action was the same; and the court of claims was a court of competent jurisdiction. 28 U.S.C. § 1491; Drier v. United States, 70 F.Supp. 888, 108 Ct.Cl. 487 (1947).

■ Is the dispute in the case at bar "between the same parties or their privies?" In my opinion, the Board, as beneficiary of the estate of Caroline Durkee, is in privity with, and is bound by the acts of Mr. Foulkes, the administrator. See 1b Moore's Federal Practice, 2d Ed., p. 1665. Likewise, Mr. McCrocklin, as an assignee, is in privity with the Board. In addition, there is privity between the defendants in the case at bar and the defendant in the prior action. United States v. Willard Tablet Co., 141 F.2d 141, 152 A.L.R. 1194 (7th Cir. 1944).

■ Mr. McCrocklin contends that Mr. Foulkes was not a validly appointed administrator and that his actions do not bind the plaintiff. In support of this position, the plaintiff has produced certain recent orders of the Kenosha county court, dated January 15, 1968, which state that the estates of Charles and Caroline Durkee were closed by judgments of that court on March 21, 1882 and November 6, 1912; that there was no need for the appointment of an administrator after November 6, 1912; that the Board is the lawful owner of Caroline Durkee's residuary estate; and

that the Board is in no way bound by the acts of the various administrators since November 6, 1912. (See plaintiff's exhibits 94–95). The same court also relieved Mr. Foulkes of his duties.

The defendants have called this court's attention to another recent order of the Kenosha county court, dated March 19, 1968, whereby the orders of January 15, 1968 are specifically vacated, and Mr. Foulkes is reinstated. Notwithstanding any uncertainty concerning Mr. Foulkes' current status, the court is of the opinion that his actions before 1966 were binding on the Board for purposes of applying the doctrine of *res judicata*. By way of analogy, it has been held that if letters of administration are revoked because they were issued to one not entitled thereto, his acts prior to revocation are valid and binding to the extent necessary to protect those who have dealt with him in good faith. Simpson v. Cornish, 196 Wis. 125, 218 N.W. 193 (1928).

■■ Mr. Foulkes was at least a *de facto* administrator. He was appointed by a court of competent jurisdiction. His action in the court of claims determined with finality that the claim against the Treasury was unsuccessful because of laches. Even if the plaintiff were found factually correct in his allegation that Mr. Foulkes brought the suit without authority from the Board, it would not negate his *de facto* competence to have pursued the suit in the court of claims. Thus, even if there is a factual dispute, it is not of such significance that it would render summary judgment inappropriate at this time.

## II. LACHES

The upholding of the defense of *res judicata* necessitates dismissal of the plaintiff's action; nevertheless, I deem it worthy of mention to express my agreement with the determination of the court of claims with respect to the application of laches.

The judgment of the Kenosha county court awarded Caroline Durkee's residuary estate to the Board and stated that the Board was to receive "any and all other property * * * which might be a part of the residue of her estate". However, it does not appear that the Board made a timely effort to discover the existence of such property. Had the Board in 1912 exercised reasonable diligence, it could well have discovered that several abortive attempts had been made to collect the alleged claim against the Treasury. Kuykendall v. Union Pacific Railroad Co., 163 F. 819 (8th Cir. 1908). The court is advised that there are other cases reflecting such claims made against the Treasury reported in 35 Ct.Cl. 639 (1900); 31 Ct.Cl. 464 (1896). There is an additional claim reported in the supreme court of the District of Columbia (Docket entry—April 2, 1902, eq. No. 22,296).

In 1914, the Treasury issued a press release which stated that certain persons were attempting to sell shares in the Charles Durkee bond claim; that there was no basis for the claim; and that "money paid for a share or interest in this so-called claim will be money thrown away." (Defendants' exhibit "C", p. 12).

In 1927, George W. Stearn and others were convicted of mail fraud in connection with their activities in promoting the Durkee claim. Stearn v. United States, 18 F.2d 465 (4th Cir. 1927). At page 467, the court said:

"Assignments 18 and 19 relate to alleged error of the court in permitting witnesses to testify as to the records of the Treasury Department, and to reports of committees of Congress bearing on the subject of the alleged Durkee claim * * * (T)here can be no doubt that it was entirely permissible for the government to show that its records did not contain any evidence of such a claim, and that, in addition, the government had issued a warning to the public of the nonexistence of the supposed indebtedness, and against their being deceived thereby."

The plaintiff's affidavit (Exhibit No. 2, pp. 51–52) shows that it was in 1933 that the Board first learned of the alleged claim, and that Mr. Knowles was

then appointed administrator to prosecute the claim. In 1934, Mr. Knowles sought permission from the attorney general of the United States to copy certain records concerning the Durkee claim, but he was informed that the Treasury had said that there were no records available. Upon Mr. Knowles' death in 1938, Mr. Doolittle was appointed administrator, and he wrote a letter to the President, but, as the plaintiff states, "nothing came of this because the Treasury Department again referred to the alleged Press Release \* \* \*."

Mr. Doolittle resigned in 1943, and Mr. Foulkes was appointed in 1945. The plaintiff states that a contract was entered into between Mr. Foulkes, the Board, and A. L. Smith. The nature of the contract is not disclosed, but it is readily apparent that their common goal was to obtain the funds from the Treasury. A. L. Smith, by court order, was required to make quarterly reports to the court until the estates were settled; the required reports were made until 1947.

The plaintiff then states: "From 1947 to 1963, nothing was done, except a few letters were written to government officials requesting their assistance. These officials included Senators and Congressmen, but no results were obtained." The plaintiff maintains that the Board had no knowledge of the prior lawsuits, and that it did not realize the size of the alleged claim until 1966, at which time it actively began to attempt to recover any interest that it might own.

On these facts, this court believes that the Board (and consequently its assignee, Mr. McCrocklin) was guilty of laches. Independent of any statute of limitations, courts of equity uniformly decline to assist those who have "slept on their rights" and show no reasonable excuse for their delay. Waller v. Texas & Pacific R. R. Co., 245 U.S. 398, 38 S. Ct. 142, 62 L.Ed. 362 (1918); Clark v. City of Chicago, 70 F.2d 172 (7th Cir. 1934).

The plaintiff contends that the doctrine of laches does not apply to the beneficiary of an express trust until the very existence of the trust is openly disavowed or repudiated by the trustee. Patterson v. Hewitt, 195 U.S. 309, 25 S.Ct. 35, 49 L.Ed. 214 (1904); McCallum v. Anderson, 147 F.2d 811 (10th Cir. 1945); Naselli v. Millholland, 89 F.Supp. 943 (D.C.D.C.1950). The plaintiff further asserts that the trustee in the case at bar has not disavowed the existence of the trust, relying on two factual points to support this position:

(1) Affidavits of a treasurer and an assistant treasurer of the United States who held their offices in 1913, dated February 14, 1936 and October 12, 1933, respectively, which purport to recognize the existence of the Durkee trust funds in the Treasury.

(2) Alleged meetings between the plaintiff and other Treasury officials in 1964, at which meetings the plaintiff was supposedly informed that the funds were in the Treasury, and that if the plaintiff could prove that Charles Durkee was the owner of the bonds, the funds would be turned over.

In my opinion, the plaintiff's position must fail. With respect to the alleged admissions of the 1913 Treasury officials, these assertions are contradicted by the events which occurred after 1913, i. e., the 1914 Treasury press release and also the subsequent disclaimers by the government to Mr. Knowles and Mr. Doolittle.

Even if admissions were made by the government in 1964 at the alleged meetings, the court is of the opinion that the relevant period for computing laches in this case began in the early nineteen thirties when the Board received actual knowledge of the claim; it is arguable that the period started to run as far back as 1912, when reasonable diligence might have disclosed the public records of prior lawsuits involving the claim. As stated by the court in Mason v. McFadden, 298 F. 384 (8th Cir. 1924):

"From the entire record it is quite apparent that if any trust ever existed

it was renounced, openly disavowed, and an adverse interest claimed by the defendant, and was so understood by the plaintiff, at least as early as February or March, 1911. The doctrine of laches would not apply as long as the trust relationship existed, but where there is a repudiation of the trust the door to the defense of laches open * * *."

I believe that the record in the case at bar sufficiently discloses that any obligation under the trust, if it ever existed, was openly and effectively disavowed by the trustee at least as early as 1934 when the Treasury informed Mr. Knowles that there were no records of the alleged Durkee trust fund available.

All the witnesses to the alleged transaction between Charles Durkee and the Treasury officials are dead. The court is advised that documents are missing from government files. Most importantly, a large amount of time has passed. On this state of the record, the plaintiff may not proceed on a claim that should have been brought over thirty years ago. The statement by the court in Clark v. City of Chicago, 70 F.2d 172 (7th Cir. 1934), page 176, quoting from Wetzel v. Minnesota Ry. Transfer Co., 169 U.S. 237, 18 S.Ct. 307, 42 L.Ed. 730 (1898) seems particularly appropriate here:

"The interests of public order and tranquillity demand that parties shall acquaint themselves with their rights within a reasonable time, and although this time may be extended by their actual ignorance, or want of means, it is by no means illimitable."

The claim is barred by laches.

In view of the foregoing considerations, it is unnecessary for the court to consider the collateral estoppel issue or the other grounds raised in the defendants' motion to dismiss.

It is ordered that the defendants' motion for summary judgment be and hereby is granted and that the plaintiffs' complaint be and hereby is dismissed.